# IN THE ~~DISTRICT/~~ SUPERIOR COURT FOR THE STATE OF ALASKA
## AT ANCHORAGE

SUTTON STORAGE LLC,

_____ Plaintiff(s),

vs.

SAFECO INSURANCE CO. OF AMERICA,

_____ Defendant(s).

CASE NO. 3AN- 14-05781 CI

## SUMMONS AND
## NOTICE TO BOTH PARTIES
## OF JUDICIAL ASSIGNMENT

To Defendant: SAFECO INSURANCE CO. OF AMERICA

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at 825 W. 4th Ave., Anchorage, Alaska 99501 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney or plaintiff (if unrepresented) KELLEY & CANTERBURY, LLC , whose address is: 821 N ST., STE. 205 . ANCHORAGE, AK 99501

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form _Notice of Change of Address / Telephone Number_ (TF-955), available at the clerk's office or on the court system's website at www.state.ak.us/courts/forms.htm , to inform the court. - OR - If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

## NOTICE OF JUDICIAL ASSIGNMENT

TO: Plaintiff and Defendant

You are hereby given notice that:

[X] This case has been assigned to Superior Court Judge T Pan
and Master _____

[ ] This case has been assigned to District Court Judge _____

CLERK OF COURT

3/21/2014
|Date

By: _____
Deputy Clerk

I certify that on 3/21/2014 a copy of this Summons was [ ] mailed [X] given to [ ] plaintiff [X] plaintiff's counsel along with a copy of the [ ] Domestic Relations Procedural Order [ ] Civil Pre-Trial Order to serve on the defendant with the summons.
Deputy Clerk MM

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

CIV-100 ANCH (10/05)(st.3)
SUMMONS

Civil Rules 4, 5, 12, 42(c), 55

Exhibit B

**KELLEY & CANTERBURY, LLC**
821 N Street, Suite 205
Anchorage, AK 99501
Ph:   (907) 276-8185
Fax:  (907) 279-3829
Attorneys for Plaintiffs

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
### THIRD JUDICIAL DISTRICT AT ANCHORAGE

SUTTON STORAGE LLC,
                    Plaintiff,

v.

SAFECO INSURANCE CO.
OF AMERICA,
                    Defendant.

Case No. 3AN-14-_____ CI

## COMPLAINT

COMES NOW the plaintiff, by and through attorneys Kelley & Canterbury, and alleges claims of relief against defendant and Safeco Insurance Company of America (hereinafter Safeco) as follows:

### JURISDICTION

1. Plaintiff Sutton Storage, LLC is an Alaskan Limited Liability Corporation, and is qualified to bring and maintain this cause of action.

2. Safeco is a corporation that is in the business of providing policies of insurance in one or more lines within the Third Judicial District in Anchorage, Alaska.

3. Plaintiff owns residential rental property at Tract A Myer Subdivision, otherwise known as 12164 N. Glenn Highway (hereinafter referred to as "the property") which is located within the Third Judicial District in the State of Alaska.

### FACTS RELEVANT TO CLAIMS

4. In September of 2011, a "handy-man" rental contract was established between plaintiff and Mr. Travis Burnett (hereinafter referred to as tenant) in accordance with A.S. 34.03.100. Exh. A, Rental contract.

phone (907) 276-8185
Facsimile (907) 279-3829

Kelley &
Canterbury
L.L.C.

821 N Str      uite 205
Anchorage, AK 99501

5. In November of 2011, plaintiff contracted with defendant Safeco and paid for a "Landlord Protection Insurance Policy". Ex. B, Affidavit with declaration page and insurance contract.

6. On or about the time period of December 2011 or January 2012, the tenant vacated the property without supplying heat to the property.

7. Upon information and belief, the tenant turned off the well water and drained the water system before vacating the property.

8. As a consequence of the tenant's act of leaving the property without heat, pipes froze, broke and caused damage to the property.

9. Plaintiff is an insured on Safeco Insurance Policy number OH1759199. See Exh. C, P3105 endorsement.

10. Plaintiff contracted for dwelling, personal property, rental and other coverage's under the "Landlord Protection Insurance Policy" number OH1759199. Exh. B.

11. Plaintiff was covered for "Landlord Protection Insurance Policy" OH1759199, and a first party intended beneficiary of the insurance contract, Exh. B and C.

12. In April 2012, a claim was submitted to defendant Safeco for damage to the property as a result of tenant identified in paragraphs 7-8 of this complaint. Ex. D, letter from Safeco dated 4/23/11.

13. In May of 2012, defendant Safeco notified plaintiff that it retained an engineer and would conduct an investigation under a "reservation of rights." Ex. E, letter dated 5/10/12.

14. Plaintiff cooperated with defendant Safeco's investigation, made the property available for inspection by Safeco's engineer, confirmed claims asserted under the policy, requested Safeco identify any basis for non-coverage of claims and called upon defendant Safeco to accept or deny coverage for losses with notification that time was of the essence as construction season is a short window of time in Alaska. Ex. F, letters to Safeco dated 5/28/12 and 6/6/12; email between Safeco and L. Kelley dated 6/18/12 and letter to Safeco 6/26/12.

}phone (907) 276-8185
Facsimile (907) 279-3829

Kelley &
Canterbury
L.L.C.

821 N Str   Juite 205
Anchorage, AK 99501

15. Defendant Safeco failed to confirm or deny coverage, maintained a reservation of rights and requested its insured protect the property from further damage. Ex. F at page 3.

16. On July 1, 2012, plaintiff again requested disclosure of available coverage and Safeco's policy/coverage defenses. Ex. G, letter to Safeco dated 7/1/12.

17. Defendant Safeco confirmed net payment on a replacement loss claim. Ex. H, letter from Safeco dated 7/18/12, referencing claim number 186436494052.

18. In two separate letters dated 7/18/12, defendant Safeco assigned a new and separate claim number for water damage and issued another reservation of rights. Exh. I, letters dated 7/18/12 claim number 169813205039.

19. In August of 2012, Safeco retained a special investigator for a water loss claim, ascribed an incorrect loss date and maintained a reservation of rights. Ex. J, letter dated 8/8/12.

20. Plaintiff maintained cooperation with Safeco by providing statements, responding to requests for information and making general observations and inquiries of Safeco's engineers report and acquisition of an estimate. Exh. K Letter to Safeco dated 8/10/12.

21. In letter dated August 16, 2012, plaintiff notified Safeco of the incorrect loss date (see paragraph 19 *infra*), continued to cooperate with Safeco's and politely called for a coverage determination. Ex. L, letter to Safeco dated 8/16/12

22. In October of 2012, Safeco stated it was "unable to provide coverage for this loss" due to failure to supply heat and ascribed a loss date of May 1, 2012. Ex. M, letter dated 10/1/12 at pages 1 and 2.

23. Plaintiff requested a copy of Safeco's investigation of the loss and explanation of policy terms. Ex. N, letter dated 10/16/12.

24. Safeco did not provide requested materials and information claiming "work product." Ex. O, 10/31/12 letter from Safeco.

25. Plaintiff requested a copy of Safeco's factual investigation and re-evaluation of coverage. Exh. P Letter dated 11/16/12.

26. Safeco refused to produce a copy of its investigation to its first party insured again claiming "work product" and that claim investigation materials would not be produced to its first party insured without a subpoena. Ex. Q, letter from Safeco dated 12/10/12.

27. In January of 2013, plaintiff further explained the character of the rental property, the covered loss and again requested materials identified in paragraphs 23 and 25 *infra* with no substantive response from Safeco. Exh. R, letter to Safeco dated January 2013.

## CLAIMS AGAINST DEFENDANT SAFECO

Plaintiff incorporates herein by reference paragraphs 1 through 27 as if fully set forth herein and for claims against Safeco alleges that defendant Safeco is liable for breach of contract, negligent adjustment, violations of statutory law and covenants of good faith and fair dealing as follows:

## COUNT I- BREACH OF CONTRACT/FAILURE TO INDEMNIFY

28. The objectively reasonable expectation, intent and unambiguous language of the "Landlord Protection Insurance Policy" defendant sold plaintiff provides for indemnify and otherwise covers a Landlord against risks of losses during or as a result of tenancy.

29. Defendant had a contractual duty to pay loss claims.

30. Defendant Safeco failed to perform and otherwise comply with indemnity provisions of the "Landlord Protection Insurance Policy".

31. Safeco unreasonably denied coverage for loss to the property claiming heat was not provided and water supply was not shut off, despite unambiguous language in defendant's policy OH1759199 that states:

## PERILS INSURED AGAINST

Coverage A – Dwelling and Coverage B – Other Structures
<u>We insure for accidental</u> direct physical loss to the property described in Coverage A and B except:
...
2. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household

iphone (907) 276-8185
Facsimile (907) 279-3829

Kelley &
Canterbury
LLC.

821 N Str   Suite 205
Anchorage, AK 99501

Telephone (907) 276-8185
Facsimile (907) 279-3829

Kelley &
Canterbury
L.L.C.

821 N St·   Suite 205
Anchorage, AK 99501

appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed <u>unless</u> you have used reasonable care to:

a. maintain heat in the building; <u>or</u>
b. shut off the water supply and drain the system and appliances of water. (Emphasis added). Exh. B at page 11.

32. Safeco knew or should have known that plaintiff's loss claims were covered by the terms of the "Landlord Protection Policy".

## COUNT II-BREACH OF WARRANTIES

Plaintiff incorporates herein by reference paragraphs 1 through 27 and paragraphs 28 through 32 of Count I as if fully set forth herein and for a separate count against Safeco alleges:

33. Defendant Safeco and plaintiff have a fiduciary relationship that affords a duty of cooperation, good faith and fair dealing.

34. Defendant breached fiduciary duties of good faith, fair dealing and cooperation by unreasonably reserving rights, failing to cooperate and explain coverage to its insured, failing to disclose and otherwise share investigation with its insured that resulted in a partial and biased investigation and denial of benefits in violation of 3AAC 26.040.(a)(1-3) and A.S. 21.36.125(a)(2-6, 8, 11 and 13-15); 3AAC 26.050, 3AAC026.060 and 3AAC 26.0701a.

35. Plaintiff was harmed by defendant's breaches and violations and incurred compensatory, expectation and consequential losses in the form of repair costs, depreciation, lost rents, and other losses.

## COUNT III – UNFAIR CLAIM ADJUSTMENT PRACTICES

Plaintiff incorporates herein by reference paragraphs 1 through 27 and paragraphs 28 through 32 of Count I; paragraphs 33 through 35 of Count II above as if fully set forth herein and as a separate count against Safeco alleges:

36. Safeco improperly and negligently adjusted claims by unreasonably reserving rights, failing to cooperate and explain coverage to its insured, failing to disclose and otherwise share investigation with its insured that resulted in a partial and

Jephone (907) 276-8185
Facsimile (907) 279-3829

Kelley &
Canterbury
LLC

821 N S· ·Suite 205
Anchorage, AK 99501

biased investigation and denial of benefits in violation of A.S. 21.36.125 (a) (2-6, 8, 11 and 13-15).

37. Safeco improperly and negligently adjusted claims by unilaterally ascribing an incorrect loss date, creating a separate claim for water damage and retaining a special investigator that resulted in a partial and biased investigation and denial of contracted benefits in violation of A.S. 21.36.125 (a) (2-6, 8, 11 and 13-15)..

38. Defendant Safeco and its agents negligently, unreasonably, and with improper motive failed to reasonably adjust plaintiff's claims in violation of Alaska Statute 21.36.125 (a) (2-6 and 13-15).

## COUNT IV – BREACH OF GOOD FAITH AND FAIR DEALING

Plaintiff incorporates herein by reference paragraphs 1 through 27 and paragraphs 28 through 32 of Count I, paragraphs 33 through 35 of Count II, paragraphs 36 through 38 of Count III above as if fully set forth herein and as a separate count against Safeco alleges:

39. Safeco's unreasonable delay, inadequate investigation and unreasonable interpretation of the policy are an improper basis to refuse to indemnify plaintiff and otherwise deny coverage for loss to the property under the "Landlord Protection Policy".

40. Safeco's unreasonable conduct harmed plaintiff in the form of consequential and compensatory losses and has unreasonably exposed plaintiff to litigation fees, costs, and other economic and non-economic harm by forcing plaintiff to initiate litigation, in violation of 3AAC 26.010, et. seg., and Alaska Statute 21.36.125.

## COUNT V – UNFAIR TRADE PRACTICES ACT

Plaintiff incorporates herein by reference paragraphs 1 through 27 and paragraphs 28 through 32 of Count I, paragraphs 33 through 35 of Count II, paragraphs 36 through 38 of Count III, and paragraphs 39 and 40 of Count IV above as if fully set forth herein and as a separate count against Safeco alleges:

41. Defendant breached fiduciary duties of good faith, fair dealing and cooperation by unreasonably reserving rights, failing to cooperate and explain coverage to its insured, failing to disclose and otherwise share investigation with its insured that

COMPLAINT
Kelley v. Safeco
Page 6 of 7

Exhibit B

resulted in a partial and biased investigation and denial of benefits in violation of A.S. 45.70.471 (a), (b) (11 and 12).

That each of the aforesaid acts of negligence, per se negligence, gross negligence, recklessness, breach of contract, unfair trade practices, breach of implied warranties and covenants within contracts and laws of the State of Alaska constitutes a proximate cause of injury, harm and loss to plaintiff.

WHEREFORE, plaintiff Sutton Storage LLC, prays for judgment against defendant Safeco as follows:

a. Payment of benefits under the "Landlord Protection Insurance Policy";

b. compensatory, consequential, general, special, statutory and exemplary damages within the jurisdictional limits of this court;

c. interest, costs, and attorney fees as provided by the rules of court, state decisional law, Alaska Statutes; and

d. such other relief the court deems fair, just, and equitable.

Dated this 21 day of March, 2014

KELLEY & CANTERBURY LLC
Attorney for Plaintiff

Michaela Kelley Canterbury
AK Bar No. 9411089

Telephone (907) 276-8185
Facsimile (907) 279-3829

Kelley &
Canterbury
L.L.C.

821 N St Suite 205
Anchorage, AK 99501

Handyman Rental Agreement

Sutton Storage, LLC
821 N St., Ste. 205
Anchorage, AK 99501

The unit, described as: *Hosea gian True/m M ory a Sug*

is rented to Travis Bennett *Brunelle*

I.   This rental agreement is between Travis Bennett, lessor and Sutton Storage, LLC.

II.  The rental is located at *M ny a Sug*

III. The rental fee is $1,200 per month plus utilities, of which $500 will be traded for work , tenant to put utilities in his name

IV.  This is a month to month rental agreement, starting 9/15/11. The first month's rent must be paid in full before occupying said unit.

V.   All rents are due and payable on the 15th day of each month. If not paid on time there will be a late charge of $50.00 and a charge of $5.00 per day thereafter. The rent is payable in advance without demand or billing at Leonard T. Kelley, 821 N Street, Suite 205, Anchorage, ALaska 99501. If the rent is not received by the 20th day of the month, you will receive a 10 day eviction notice for non-payment of rent, according to the Landlord and Tenant Act.

VI.  Unit Conditions:

A. A thirty (30) day written notice of intent to vacate is required from lessee upon completion of the term.

B. No hazardous waste on property.

C. Lessee may not permit a nuisance or disturbance of any kind.

D. The premises may not be used for any purpose other than a residence.

E. Lessee may not sublet said premises nor assign this rental agreement or any part thereof without the consent of the landlord.

F. Lessee is fully responsible for any and all acts of his guests.

G. Motor vehicles may not be stored on the premises, all vehicles must be registered.

VII. As a condition of reduced rent, Lessee agrees to:

   A. Repaint sheetrock.

   B. Replace broken window(s)

   C. Replace/repair water closets(bathrooms)

   D. Lessee will keep the furnace, radiators, ranges, stoves, water pipes, and all other water, gas, and electrical appliances and fixtures in good and substantial repair and condition.

   E. Unstop and keep clear all waste pipes, to repair water closets and other plumbing fixtures.

   F. Not keep or store any explosives, inflammable fluids or materials.

   G. To pay all bills for telephone and electricity and other utility services to the Property.

   H. To keep the driveways and sidewalks clean of ice and snow.

   I. To keep entryways and hallways clear of all obstructions, to clean rugs, linoleum and walks.

   J. Paint interior/exterior wood.

   K. Install trim around doors/windows.

   L. Install two smoke detectors.

   M. Replace walkway wood.

   N. Schedule of the items to be repaired by date are attached as Exhibit I.

VIII. Lessee represents that he has the ability as a condition of lower rent to repair the unit, remove snow and ice and otherwise maintain the unit without lessors assistance. In short, this is a Handyman Lease.

IX. Lessor does not covenant for the quiet enjoyment of the term by Lessee and of any continuations of such term. It is understood that Lessee will maintain heating, water, hot water and other essential services, and otherwise maintain the interior and exterior of the property; including major appliances.

X. Lessee represents that an inspection satisfactory to Lessee has been made of the Property and agrees to accept the property in its present condition. Lessee agrees not to cause the property to be encumbered by labor and or material lien.

XI. Maintenance/Repair: Lessee/optioner understand the subject premises is in need of repair. Lessee agrees to maintain and repair said property and that there are no warranties implied or expressed.

Sutton Storage, LLC - Handyman Lease - Bennett, Travis                    Page 2 of 4

XII. The Landlord reserves the right of access to the premises for the purpose of:

    A. Inspection;

    B. Repairs, alterations or improvements;

    C. to supply services;

    D. To exhibit premises to prospective or actual purchases. Access shall be at a reasonable time except in cases of emergency or abandonment.

XIII. Tenant is required to give advance notice of absences in excess of seven (7) days.

XIV. Lessee in consideration of reduced rent agrees to waive any duties of maintenance repairs by Lessor and agrees to this Handy Man Agreement.

XV. Any disputes/claims/conflicts will be resolved by a single arbiter via binding arbitration. The arbiter will be agreed to by the parties or the court.

XVI. Other: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

| Tenant | Date | Landlord | Date |
| --- | --- | --- | --- |
| Travis Bennett | | Sutton Storage, LLC | |

Exhibit B

Case 3:14-cv-00083-TMB  Document 1-2  Filed 05/07/14  Page 11 of 88

Exhibit I

I. October/November/December:

  A. To repair, texture and paint sheetrock and make sure no pipes are leaking and all electrical is operating correctly. , *replace Pipe* Lid

II. January & February:

  A. Replace broken windows.

III. March / April / May:

  A. Paint 3 bathrooms.

IV. June / July:

  A. Fix side and back porch and paint.

V. August:

  A. Cleanout, cut grass around greenhouse.

# AFFIDAVIT

State of Indiana

County of Hamilton

NAME OF INSURED:    LEONARD KELLEY

POLICY NUMBER:    OH1759199

POLICY DATES:    11-16-2011 TO 11-16-2012

David Hager being duly sworn on oath says he is an archivist of

SAFECO Insurance Company of America  and that he has compared the

attached the insurance policy number listed above and endorsements with

the original records of the policy of insurance and endorsements

contained in the Company's files and that the same is a true and exact

recital of all the provisions in the said original policy and endorsements

attached thereto.

Subscribed and sworn to before me

On  May 6, 2013

Notary Public

Luann M Mueller
Notary Public, State of Indiana
Commission # 624064
My Commission Expires
February 7, 2019

Exhibit B pg. 1 of 32

Exhibit B

**Safeco** Insurance.™
Member of Liberty Mutual Group

## SAFECO INSURANCE COMPANY OF AMERICA
Home office: Safeco Plaza, Seattle, WA 98185-0001 (A stock insurance company.)
## LANDLORD PROTECTION POLICY DECLARATIONS - SPECIAL FORM

**INSURED:**
LEONARD KELLEY
821 N ST STE 205
ANCHORAGE AK  99501-3285

**AGENT:**
ALASKA USA INS BROKERS LLC
851 E USA CIR STE 102
WASILLA          AK    99654-7188

TELEPHONE: (907) 352-8300

**DESCRIBED LOCATION:**
12164 N GLENN HWY
SUTTON AK  99674

**POLICY PERIOD FROM:** NOV. 16 2011
**TO:** NOV. 16 2012

**MORTGAGE SERVICING AGENCY:**
NONE

**1ST MORTGAGEE:**
NONE

**OCCUPANCY:** TENANT

**LOAN NO.:** NONE

| COVERAGES FOR THIS LOCATION | | LIMITS | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|
| A DWELLING | FIRE | $ 453,400 | | $ 1,166.00 |
| | SPECIAL | | | 302.00 |
| B OTHER STRUCTURES | FIRE | $ 45,340 | | INCL |
| | SPECIAL | | | |
| C PERSONAL PROPERTY | FIRE | $ 2,500 | $ | 6.00 |
| | BROAD | | | 1.00 |
| D LOSS OF RENT, RENTAL VALUE, & ADDL LIVING EXP. | | $ 45,340 | | INCL |

**INCLUDED:**
ADDL INTEREST
ORDINANCE OR LAW COVERAGE                        $   45,340          INCL

**OPTIONS:**

| | | | | |
|---|---|---|---|---|
| H-PREMISES LIABILITY (EACH OCCURRENCE) | | $ 500,000 | | $ 84.00 |
| PERS. INJURY, WRONGFUL EVICTION, PRIVACY INVASION | | | | INCL |
| MEDICAL PAYMENTS (EACH PERSON) | | $ 10,000 | | |
| EL - EXTENDED LIABILITY | | $ 500,000 | | $ 64.00 |

**DEDUCTIBLES:**
PROPERTY COVERAGES, EXCEPT AS OTHERWISE NOTED            $  5,000

**DWELLING ANNUAL PREMIUM    $ 1,623.00**

You may pay your premium in full or in installments. There is no installment fee for
the following billing plans: Full Pay, Annual 2-Pay. Installment fees for all other
billing plans are listed below. If more than one policy is billed on the installment
bill, only the highest fee is charged. The fee is:
   $2.00 per installment for recurring automatic deduction (EFT)
   $2.00 per installment for recurring credit card or debit card
   $5.00 per installment for all other payment methods

**POLICY FORMS APPLICABLE TO THIS POLICY:**
P-4200/EP 9/06, P-4103/EP 7/08, P-4110/AKEP R1 11/08, P-4115/AKEP R1 6/05,
P-4134/EP 12/07, P-3105/EP R2 3/87, CN-17/EP 12/03

ORIGINAL

P-4200/EP 9/06
G1

Exhibit B pg. 2 of 32
DATE PREPARED NOV. 21 2011



**POLICY NUMBER:** OH1759199

## OPTION EL — LIABILITY EXTENDED TO OTHERS

**AGENT:**
ALASKA USA INS BROKERS LLC
851 E USA CIR STE 102
WASILLA      AK   99654-7188

**INSURED:**
LEONARD KELLEY

**AGENT TELEPHONE:** (907) 352-8300

SUTTON STORAGE LLC
821 N STREET
ANCHORAGE AK  99501

← **ADDITIONAL INSURED**

**EFFECTIVE DATE:**
NOV. 16 2011

The definition of *Insured* is extended to include the person or organization named on this endorsement as an additional *Insured,* but only with respect to the *Insured location* shown on this endorsement for *bodily injury* as defined in this endorsement or *property damage* arising out of the maintenance or use of the *Insured location,* subject to the following:

**EXCLUSIONS**

This insurance does not apply to *bodily injury* to any employee arising out of or in the course of that person's employment by an additional insured named on this endorsement. This exclusion applies whether the employee is a *residence employee* or a temporary employee furnished to any *insured.*

**GENERAL CONDITIONS**

If this policy is canceled or not renewed by us, all parties named above will be notified in writing.

**DEFINITIONS**

With respect to the person or organization named as an additional Insured on this endorsement, the definitions of *"Bodily injury"* in Option E — Comprehensive Personal Liability and Option H — Premises Liability (see DEFINITIONS, item **2,** for both), are modified as follows:

2.   *"Bodily injury"* means bodily harm, sickness or disease, including required care, loss of services and death resulting there from.

Section **2.b.** of those definitions is deleted.

All provisions of this policy apply.

SAFECO INSURANCE COMPANY OF AMERICA

**INSURED'S COPY**

P-4134/EP 12/07
G2

DATE PREPARED: NOV. 23 2011

# ADDITIONAL INTEREST ENDORSEMENT

**AGENT:**
ALASKA USA INS BROKERS LLC
851 E USA CIR STE 102
WASILLA      AK    99654-7188

**INSURED:**
LEONARD KELLEY

**AGENT TELEPHONE:** (907) 352-8300

SUTTON STORAGE LLC
821 N STREET
ANCHORAGE AK  99501

←**ADDITIONAL INTEREST**

**TYPE OF INTEREST:**
LLC - LIMITED LIABI

**EFFECTIVE DATE:**
NOV. 16 2011

## DEFINITIONS

The definition of **Insured** contained in this policy is amended to include the person(s) and/or organization(s) listed above, subject to the following conditions:

## SECTION I — PROPERTY COVERAGES

[X]  If this box is checked, this additional interest is applicable to Coverage **A** — Dwelling, Coverage **B** — Other Structures, or Coverage **C** — Personal Property.

Loss payments shall be made as follows:

1st  —  To the Mortgagee named in the Declarations or Statement of Coverage, as its interest in the damaged property may appear;

2nd —  To the persons or organizations listed as mortgagees on this or other endorsement, in their order of listing, as their interest(s) in the damaged property may appear;

3rd  —  To all other persons or organizations listed on this or other endorsement, in their date order of listing, as their interest(s) in the damaged property may appear;

4th  —  The balance, if any, to the named **Insured.**

## SECTION II — LIABILITY COVERAGES

[ ]  If this box is checked, this additional interest is applicable to Option **E** — Comprehensive Personal Liability, or Option **H** — Premises Liability, but only with respect to the **residence premises.**

This coverage does not apply to **bodily injury** to any employee arising out of or in the course of the employee's employment by the person(s) or organization(s) named on this or other endorsement.

## SECTION I and SECTION II — CONDITIONS

If this policy is canceled or not renewed by us, all additional interests will be notified in writing.

All other provisions of this policy apply.

**SAFECO INSURANCE COMPANY OF AMERICA**

INSURED'S COPY

DATE PREPARED: NOV. 28 2011



# LANDLORD PROTECTION POLICY — SPECIAL FORM

## Table of Contents

|  | Beginning On Page |
|---|---|
| **AGREEMENT** | 1 |
| **DWELLING COVERAGES** | 1 |
| Coverage **A** — Dwelling | |
| Coverage **B** — Other Structures | |
| Coverage **C** — Personal Property | |
| Coverage **D** — Loss of Rent, Rental Value and Additional Living Expenses | |
| Other Coverages | |
| **DEDUCTIBLE** | 6 |
| **PERILS INSURED AGAINST** | 6 |
| Dwelling, Other Structures and Personal Property | |
| **GENERAL EXCLUSIONS** | 8 |
| **GENERAL CONDITIONS** | 10 |
| **DEFINITIONS** | 15 |
| **OPTIONAL COVERAGES** | |
| Option H - Premises Liability | |
| Option EL - Extended Liability | |



## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## COVERAGES

**THIS INSURANCE APPLIES TO THE DESCRIBED LOCATION, COVERAGES FOR WHICH A LIMIT OF LIABILITY IS SHOWN AND PERILS INSURED AGAINST FOR WHICH A PREMIUM IS STATED.**

**COVERAGE A — DWELLING**

We cover:

1. the dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes;

2. structures attached to the dwelling other than fences, patios, driveways or walkways;

3. attached carpeting, built-in appliances, fixtures;

4. materials and supplies on or adjacent to the Described Location for use in the construction, alteration or repair of the dwelling or other structures on this Described Location; and

5. if not otherwise covered in this policy, building equipment used for the service of and located on the Described Location.

This coverage does not apply to land, including land on which the dwelling is located or retaining walls separated by a clear space from the dwelling.

**COVERAGE B — OTHER STRUCTURES**

1. We cover:

   a. fences, patios, driveways and walkways;

   b. other structures on the Described Location, separated from the dwelling by clear space, including other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

   This coverage does not apply to land, including land on which the other structures are located.

2. We do not cover other structures:

   a. used in whole or in part for commercial, manufacturing or farming purposes;

   b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage; or

   c. grave markers, including mausoleums.

**COVERAGE C — PERSONAL PROPERTY**

We cover personal property, usual to the occupancy as a dwelling and owned or used by you or members of your family residing with you while it is on the Described Location.

**Property Not Covered.** We do not cover:

1. money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold, goldware, gold-plated ware, silver, silverware, silver-plated ware, platinum and pewterware.

   Silverware, goldware and pewterware include:

   a. plateware, flatware, hollowware, tea sets, trays, trophies and the like;

   b. other utilitarian items made of or including silver or gold; and

   c. all items of pewterware;

2. jewelry, watches, furs, precious and semiprecious stones;

P-4103/EP 7/08

—1—
Exhibit B

Exhibit B pg. 6 of 32


Case 3:14-cv-00083-TMB   Document 81-2 Filed 05/07/14   Page 18 of 88

3. rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection;

4. securities, credit cards, electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes, manuscripts, passports, tickets, personal documents, and records or data;

   We do not cover these categories regardless of the medium (such as paper or electronic) on which the material exists;

5. firearms;

6. animals, birds or fish;

7. hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

8. aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

9. *motorized vehicles.* This includes:

   a. equipment, accessories and parts, disassembled or not; or

   b. any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles or all other motorized land conveyances, including its accessories.

      Accessories include:

      (1) antennas;

      (2) tapes, wires, records, discs or other media;

      that can be used with any device or instrument described above.

   *Motorized vehicles* not subject to motor vehicle registration which are:

   a. designed to assist the handicapped; or

   b. used solely to service the Described Location;

   are covered up to $1,000.

10. watercraft of all types, including their trailers, furnishings, equipment and outboard motors other than rowboats and canoes. This exception for rowboats and canoes does not include their outboard motors and trailers.

11. data, including data stored in:

    a. books of account, drawings or other paper records; or

    b. computers and related equipment;

12. rugs, carpets (except wall-to-wall carpet), tapestries, wall hangings or other similar articles for loss by theft;

13. water, steam or electricity;

14. grave markers, including mausoleums;

15. business property, other than furnishings and building equipment used to service the Described Location, located on or off of the Described Location;

16. articles separately described and specifically insured, regardless of insured limit, in this or any other insurance; or

17. property of roomers, boarders and other tenants.

If you remove personal property from the Described Location to a newly acquired principal residence, the Coverage C limit of liability will apply at each residence for the 30 days immediately after you begin to move the property there. This time period will not extend beyond the termination of this policy. Our liability is limited to the proportion of the limit of liability that the value at each residence bears to the total value of all personal property covered by this policy.

## COVERAGE D — LOSS OF RENT, RENTAL VALUE AND ADDITIONAL LIVING EXPENSE

If a loss to property described in Coverage **A, B** or **C** by a **Peril Insured Against** under this policy makes the Described Location uninhabitable for its normal use, we cover:

1.  **Loss of Rent,** meaning loss of rental income to you from that part of the Described Location rented at the time of the loss, less any expenses that do not continue while that part of the Described Location rented is uninhabitable.

    This coverage does not apply to:

    a.  the Described Location or that part of the Described Location that is not rented or leased to a tenant at the time of the loss; or

    b.  to any increase in rent or lease payment that occurs after the time of the loss.

    A rental or lease within 60 days immediately prior to the loss shall be considered as rented at the time of the loss. Rental or lease includes a signed agreement for actual rental or lease within 60 days of the loss. Payment shall be based on the last actual monthly rental rate charged or the signed agreement.

2.  **Rental Value,** meaning loss of rental income due to delay in occupancy of that part of the Described Location held for rental if there is no tenant, or legal obligation for rent, or lease, by a tenant, at the time of the loss. This coverage applies only for the time that rental or lease by a tenant is delayed due to a covered loss. **Rental Value** does not include any expenses that do not continue while that part of the Described Location is uninhabitable.

    Our liability for **Rental Value** shall be no more than one half the coverage limit stated in the Declarations for Coverage **D**, and a monthly limit of no more than one twelfth of this limit for **Rental Value.**

    This coverage does not apply to any increase in rent or lease payment that occurs after the time of the loss.

Payment under **Loss of Rent** or **Rental Value** will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental but not to exceed 12 months.

3.  **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you if you are displaced from the Described Location so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the Described Location or, if you permanently relocate, the shortest time required for your household to settle elsewhere, but not to exceed 12 months or the amount shown in the Declarations for this coverage.

If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a **Peril Insured Against** in this policy, we cover **Loss of Rent, Rental Value** and **Additional Living Expense** for no more than two weeks during which use is prohibited.

Payment under **1., 2.,** or **3.,** above, reduces the Coverage **D** limit of liability by the amount paid. The Coverage **D** limit of liability is the most we will pay for the total of all payments made for **1., 2.,** and **3.,** above. The periods of time under **1., 2.,** or **3.,** above, are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## OTHER COVERAGES

The following **Other Coverages** are subject to all the terms, provisions, exclusions and conditions of this policy.

1.  **Debris Removal** — We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property.

    For trees, we will pay the reasonable expenses you incur, up to $500, for the removal of trees from the Described Location, provided the trees damaged the dwelling or other structures. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2.  **Improvements, Alterations and Additions** — If you are a tenant of the Described Location, you may use up to 10% of the Coverage **C** limit of liability for loss by a **Peril Insured Against** to improvements, alterations and additions made or acquired at your expense to that part of the Described Location used only by you. Use of this coverage does not reduce the Coverage **C** limit of liability for the same loss.


Case 3:14-cv-00083-TMB   Document 20-1   Filed 05/07/14   Page 20 of 88

3. **World-Wide Coverage** — You may use up to 10% of the Coverage C limit of liability for loss by a **Peril Insured Against** to property covered under Coverage C except rowboats and canoes, while anywhere in the world. Use of this coverage reduces the Coverage C limit of liability for the same loss.

4. **Reasonable Repairs** — We will pay up to $5,000 for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

5. **Property Removed** — We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Lawns, Plants, Shrubs and Trees** — You may apply up to 5% of the amount shown on the Declarations for Coverage A for loss to, repair or replacement of plants, shrubs, or trees, or all lawns on the Described Location damaged by fire, lightning, explosion, riot or civil commotion, aircraft, vehicles, except vehicles owned or operated by you or a resident of the Described Location, vandalism or malicious mischief or damage by burglars.

   We shall not be liable for more than $500 on any one plant, shrub or tree or our proportion of $500 on shared ownership of any one plant, shrub or tree. We do not cover property grown for commercial purposes.

   For the purposes of this coverage, all lawns are considered one plant.

   Payment under this coverage reduces the Coverage A limit of liability by the amount paid.

7. **Fire Department Service Charge** — We will pay, up to $500, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect property from a **Peril Insured Against.**

   We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

8. **Collapse.**

   a. We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

      (1) The perils named under **Perils Insured Against, Coverage C — Personal Property;**

      (2) Decay that is hidden from view, unless the presence of such decay is known to an *insured* prior to collapse;

      (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an *insured* prior to collapse;

      (4) Weight of contents, equipment, animals or people;

      (5) Weight of rain which collects on a roof; or

      (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   b. Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **a.(2)** through **(6)** above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

   c. With respect to this coverage:

      (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose;

      (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

      (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building; or

Exhibit B

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Land Stabilization.** We will pay up to $5,000 for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling or other structures sustaining a covered loss. This is an additional amount of insurance.

10. **Ordinance or Law.** We will pay for damage to **Coverage A — Dwelling or Coverage B — Other Structures** resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair or demolition of the property.

This coverage does not apply unless you choose to repair or rebuild the property at its present location.

We do not cover:

a. the loss in value to any covered building or other structure due to the requirements of any ordinance or law;

b. the costs to comply with any ordinance or law which requires any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants or contaminants** on any covered building or other structure.

You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.

The limit of liability shown in the Declarations is the most we will pay for the total of all loss or costs for **Coverage A — Dwelling or Coverage B — Other Structures,** regardless of the number of locations or number of claims made.

This coverage is additional insurance.

11. **Fungi, Wet or Dry Rot, or Bacteria.** We will pay up to $5,000 for:

a. the direct physical loss to covered property caused by **fungi,** wet or dry rot, or bacteria;

b. the cost to remove **fungi,** wet or dry rot, or bacteria from covered property;

c. the cost to tear out and replace any part of the building or other covered property as needed to gain access to the **fungi,** wet or dry rot, or bacteria;

d. the cost of any testing of air or property to determine the absence, presence or level of **fungi,** wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided to the extent that there is a reason to believe there is the presence of **fungi,** wet or dry rot, or bacteria; and

e. **Coverage D — Loss of Rent, Rental Value** and **Additional Living Expense.**

This coverage only applies when such loss or costs:

f. are a result of a loss we cover that occurs during the policy period;

g. are not excluded under **General Exclusions;** and

h. result after all reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to lawns, plants, shrubs or trees.

Regardless of the number of claims made or the number of locations, the $5,000 limit of liability is the most we will pay during the policy period shown in the Declarations for the total of all such loss or costs for Coverages **A, B, C** and **D,** and does not increase the limit of liability for these coverages.

12. **Household Products Coverage.** We cover direct physical loss to the property described in Coverages A and B resulting from a peril covered under this policy and arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products at the Described Location. Household products include items currently in use or your possession at the Described Location in normal household quantities, such as paint, paint thinners, soaps, bleach, pesticides, herbicides, motor oil, gasoline, heating fuel and similar items. For purposes of this coverage, household products do not include materials containing asbestos, lead or formaldehyde.


Case 3:14-cv-00083-TMB   Document 1-1   Filed 05/07/14   Page 22 of 88

We will pay up to 5% of the Coverage A limit of liability stated in the Declarations for any loss during the policy period under this coverage after you have paid your deductible. This is an additional amount of insurance.

This coverage does not apply to:

**a.** any fee, assessment or expense of any governmental authority;

**b.** loss arising out of household products possessed or used:

    **(1)** for *business* purposes;

    **(2)** for illegal purposes;

    **(3)** by contractors; or

    **(4)** on driveways or walkways.

Item 8. under **General Exclusions** does not apply to this **Other Coverage.**

In the event that a loss is covered under both this coverage and **Other Coverages, Ordinance or Law,** you may elect either one of these coverages, but not both.

---

## DEDUCTIBLE

---

In case of loss under this policy, we cover only that part of the loss over the applicable deductible stated in the Declarations. The deductible does not apply to **Coverage D — Loss of Rent, Rental Value and Additional Living Expenses** or **Fire Department Service Charge.**

---

## PERILS INSURED AGAINST

---

### COVERAGE A — DWELLING AND COVERAGE B — OTHER STRUCTURES

We insure for accidental direct physical loss to the property described in Coverages A and B except:

**1.** losses excluded under **General Exclusions;**

**2.** freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

    **a.** maintain heat in the building; or

    **b.** shut off the water supply and drain the system and appliances of water;

    A dwelling under construction includes being remodeled, reconstructed, renovated or repaired in preparation for occupancy as a residence at the time of loss.

**3.** freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, foundation, retaining wall, bulkhead, pier, wharf or dock;

**4.** theft of any property which is not actually part of any building or structure covered;

**5.** theft in or to a dwelling or structure under construction, including materials or supplies for use in the construction, until or unless the dwelling is occupied. A dwelling under construction includes being remodeled, reconstructed, renovated or repaired. This exclusion does not apply if you are occupying the dwelling as your primary residence at the time of the loss;

**6.** wind, hail, ice, snow or sleet to outdoor radio and television antennas and aerials, including their lead-in wiring, masts or towers, or to lawns, trees, shrubs or plants;

**7.** **a.** wear and tear, marring, scratching, deterioration;

    **b.** inherent defect, mechanical breakdown or any quality in property that causes it to damage or destroy itself;

    **c.** smog, rust or other corrosion, or electrolysis;

    **d.** smoke from agricultural smudging or industrial operations;

Exhibit B

e. settling, cracking, shrinking, bulging, or expansion of pavements, patios, bulkheads, foundations, footings, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;

f. birds, vermin, rodents, insects or domestic animals;

g. pressure from or presence of plant roots.

If any of these cause water to escape from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water, unless otherwise excluded, and we cover the cost of tearing out and replacing any part of the dwelling necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment; or roof drain, gutter down spout or similar fixtures or equipment.

Under items 2. thru 7. any ensuing loss, not excluded or excepted in this policy, is covered.

---

## COVERAGE C — PERSONAL PROPERTY

We insure for direct physical loss to property described in Coverage C caused by a peril listed below unless the loss is excluded in the General Exclusions:

1. **Fire or lightning.**

2. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening, or to:

   a. lawns, plants, shrubs or trees;

   b. canoes and rowboats.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

   Loss must result from actual physical contact of a vehicle with covered property or with the building containing the covered property.

   This peril does not apply to loss to personal property transported by a vehicle unless the vehicle is first damaged by collision and the loss to personal property is a result of involvement in the collision.

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from fireplaces or from agricultural smudging or industrial operations including slash burns.

8. **Vandalism or malicious mischief.**

   This peril does not include loss by pilferage, theft, burglary or larceny.

9. **Damage by Burglars,** meaning damage to covered property caused by burglars.

   This peril does not include theft of property.

10. **Falling Objects.**

    This peril does not include loss to property contained in the building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not covered.

11. **Weight of ice, snow or sleet** which causes damage to property contained in the building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    This peril does not include loss:

    a. to the appliance from which the water or steam escaped;

    b. caused by or resulting from freezing; or

P-4103/EP 7/08

Exhibit B

Case 3:14-cv-00083-TMB   Document 110-2   Filed 05/07/14   Page 24 of 88

 **c.** on the Described Location caused by accidental discharge or overflow which occurs off the Described Location.

 For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment

**13.** **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

 We do not cover loss caused by or resulting from freezing under this peril.

**14.** **Freezing** of a plumbing, heating or air conditioning or automatic fire protective sprinkler system or of a household appliance.

 This peril does not include loss on the Described Location while the dwelling is unoccupied or being constructed, unless you have used reasonable care to:

 **a.** maintain heat in the building; or

 **b.** shut off the water supply and drain the system and appliances of water.

 However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

 A dwelling under construction includes being remodeled, reconstructed, renovated or repaired in preparation for occupancy as a residence at the time of loss.

**15.** **Sudden and accidental damage** from artificially generated electrical current. This peril does not include loss to a tube, transistor or similar electronic components.

---

## GENERAL EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1.** **Ordinance or Law,** meaning enforcement of requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion does not apply to the amount of coverage that may be provided under **Other Coverages, Ordinance or Law.**

 This exclusion applies whether or not the property has been physically damaged.

**2.** **Earth Movement,** meaning:

 **a.** the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to *earthquake,* landslide, mudflow, mudslide, sinkhole, subsidence, movement resulting from improper compaction, site selection or any other external forces, erosion including collapse or subsidence of land along a body of water as a result of erosion or undermining resulting from the action of water. This includes the channeling of a river or stream;

 **b.** erosion, shifting or displacement of materials supporting the foundation; and

 **c.** volcanic blast, volcanic explosion, shockwave, lava flow, lahars and fallout of volcanic particulate matter.

 This exclusion applies whether the earth movement is caused by or resulting from human or animal forces or any act of nature.

 Direct loss by fire, explosion, or theft is covered.

**3.** **Water Damage,** meaning:

 **a.** **(1)** flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, storm surge or spray from any of these, whether or not driven by wind, including hurricane or similar storm; or

  **(2)** release of water held by a dam, levee, dike or by a water or flood control device or structure;

 **b.** water below the surface of the ground, including that which exerts pressure on, or seeps or leaks through a building, wall, bulkhead, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems or other structure.

**c.** water which escapes or overflows from sewers or drains located off the Described Location; or

**d.** water which escapes or overflows from drains or related plumbing appliances on the residence premises. However, this exclusion does not apply to overflow and escape caused by malfunction on the residence premises, or obstruction on the residence premises, of a drain or plumbing appliance on the residence premises; or

**e.** water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

Water includes any water borne materials.

This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire or explosion resulting from water damage is covered.

**4. Power Interruption,** meaning the interruption of power or other utility service if the interruption takes place away from the Described Location. If a **Peril Insured Against** ensues on the Described Location, we will pay only for loss caused by the ensuing peril.

**5. Neglect,** meaning your neglect to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a **Peril Insured Against.**

**6. War,** including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**7. Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of the Conditions.

**8. Pollution or Contamination,** meaning loss resulting from the production, use, storage, discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, or contamination, of or by *pollutants or contaminants* whether actual, alleged or threatened at any time and however caused and whether or not within the knowledge or control of an *insured.*

This exclusion does not apply to the extent coverage is provided for in **Other Coverage, Household Products Coverage.** Direct loss by fire resulting from pollution or contamination is covered.

**9. Intentional Loss,** meaning any loss arising out of any act committed:

**a.** by or at the direction of any *insured* or any person or organization named as an additional *insured;*

**b.** with the intent to cause a loss.

This exclusion does not apply to an otherwise covered property loss if the property loss is caused by an act of domestic abuse by another *insured* under the policy provided:

**c.** the *insured* claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

**d.** the *insured* claiming a property loss did not cooperate in or contribute to the creation of the property loss.

Payment pursuant to this provision shall be limited to the insurable interest in the property of the *insured* claiming a property loss, less payments made pursuant to **General Conditions, Mortgage Clause.**

**e.** For purposes of this provision, "domestic abuse" means:

**(1)** physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members;

**(2)** sexual assault of one family or household member by another;

**(3)** stalking of one family or household member by another family or household member; or

**(4)** intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

**10. Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

**a.** planning, zoning, development, surveying, siting;

**b.** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** materials used in repair, construction, renovation or remodeling; or

**d.** maintenance;

of property whether on or off the Described Location by any person or organization. However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

11. **Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

12. Weather that contributes in any way with a cause or event excluded in this section to produce a loss. However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

13. *Fungi,* Wet or Dry Rot, or Bacteria meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for in the **Other Coverage 11. *Fungi,* Wet or Dry Rot, or Bacteria** under **Dwelling Coverages.**

14. Collapse, except as provided in **Other Coverages, Collapse.** However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

15. Any presence or condensation of humidity, moisture or vapor; or the continuous or repeated seepage or leakage of water or steam that occurs over a period of weeks, months or years, including but not limited to that from, around, through or contained by:

    a. plumbing, heating, or air conditioning systems or fire protective or other sprinkler systems;

    b. household appliances; or

    c. roofs, roofing materials, gutters, downspouts, skylights, windows, doors, vents, insulation and siding or other exterior finish materials, or any part, including the application or use of accessories, flashing, caulking or sealants.

    However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

16. **Illegal Manufacturing, Production or Operation,** meaning loss resulting from:

    a. the illegal growing of plants or the illegal raising or keeping of animals; or

    b. resulting from the illegal manufacture, production, operation or processing of chemical, biological, animal or plant materials.

    Such loss is excluded whether by vandalism or any other cause and whether or not within the knowledge or control of an *Insured.*

17. Vandalism and malicious mischief, theft or attempted theft, damage by burglars, fire and any ensuing loss, including breakage of glass or safety glazing material, caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, theft or attempted theft, if the Described Location:

    a. is rented or held for rental as a residence and has not been occupied as a residence for more than 60 consecutive days immediately before the loss. Occupied as a residence means the place where an occupant or occupants are living as a primary residence; or

    b. is vacant for more than 60 consecutive days immediately before the loss.

    This exclusion does not apply if the dwelling is under construction. A dwelling under construction includes being remodeled, reconstructed, renovated or repaired in preparation for occupancy as a residence at the time of the loss.

## GENERAL CONDITIONS

1. **Policy Period and Changes.**

    a. The effective time of this policy is 12:01 A.M. Standard Time at the Described Location. This policy applies only to loss which occurs during the policy period. The policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

    b. Changes:

        (1) Before the end of any policy period, we may offer to change the coverage provided in this policy. Your payment of the premium billed by us for the next policy period will be your acceptance of our offer.

    **(2)** This policy contains all agreements between you and us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premiums of $3.00 or less will be waived.

**2.** **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable in any one loss:

    **a.** for an amount greater than the interest of a person insured under this policy at the time of loss; or

    **b.** for more than the limit of liability that applies.

**3.** **Concealment or Fraud.** This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an **Insured** have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time application was made or any time during the policy period.

We may void this policy or deny coverage for a loss or occurrence if you or an **Insured** have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or occurrence. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so, you must reimburse us for any payments we may have already made.

**4.** **Your Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

    **a.** cooperate with us in the investigation, settlement or defense of any claim or suit;

    **b.** give immediate notice to us or our agent;

    **c.** notify the police in case of loss by theft;

    **d.** protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

    **e.** prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, *actual cash value* and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

    **f.** as often as we reasonably require:

        **(1)** exhibit the damaged and undamaged property;

        **(2)** provide us with records and documents we request and permit us to make copies; and

        **(3)** submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse or any other **Insured**. You shall not interfere with us examining any other *insured;*

    **g.** submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

        **(1)** the time and cause of loss;

        **(2)** interest of the insured and all others in the property involved and all encumbrances on the property;

        **(3)** other insurance which may cover the loss;

        **(4)** changes in title or occupancy of the property during the term of the policy;

        **(5)** specifications of any damaged building and detailed repair estimates;

        **(6)** an inventory of damaged personal property described in 4.e.; and

        **(7)** receipts for **Additional Living Expenses** incurred or records supporting the **Loss of Rent** and **Rental Value.**

**5.** **Loss Settlement.** Covered property losses are settled as follows but not exceeding the applicable limit of liability stated in the Declarations:

    **a.** the dwelling under **Coverage A — Dwelling:**

        **(1)** We will pay the full cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

            **(a)** the limit of liability under this policy applying to the dwelling;


Case 3:14-cv-00083-TMB   Document 1-8   Filed 05/07/14   Page 28 of 88

> (b) the replacement cost of that part of the damaged dwelling for equivalent construction and use on the same premises as determined shortly following the loss; or
>
> (c) the amount actually and necessarily incurred to repair or replace the damaged dwelling.

(2) When more than one layer of siding, roofing or finished flooring exists, we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.

(3) When interior walls are constructed of plaster, we will pay for the plaster to be replaced with drywall. The payment will be subject to all other policy conditions relating to loss payment.

(4) When the cost to repair or replace the damage is more than $1,000, we will pay the difference between *actual cash value* and replacement cost only after the damaged or destroyed property has actually been repaired or replaced.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage on an *actual cash value* basis. You may still make claim for any additional liability according to the provisions of this Condition **5. Loss Settlement,** provided you notify us of your intent to do so within 180 days after the date of loss.

(6) The following property under **Coverage A — Dwelling** whether or not attached to buildings at *actual cash value* at the time of the loss, but not exceeding the amount necessary to repair or replace:

(a) carpeting;

(b) domestic appliances;

(c) awnings;

(d) outdoor antennas;

(e) outdoor equipment;

(f) materials and supplies for use in the construction, alteration or repair of the dwelling or other structures; and

(g) property under **Coverage A — Dwelling** that is unattached building equipment used for the service of and located on the Described Location.

**b.** property under **Coverage B — Other Structures** and **Coverage C — Personal Property** at *actual cash value* at the time of loss but not exceeding the amount necessary to repair or replace.

**6. Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

**a.** repair or replace any part to restore the pair or set to its value before the loss; or

**b.** pay the difference between *actual cash value* of the property before and after the loss.

**7. Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or replacement cost, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or replacement cost of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

Each party will:

**a.** pay its own appraiser; and

**b.** bear the other expenses of the appraisal and umpire equally.

**8. Other Insurance and Service Agreement.** If property covered by this policy is also covered by:

**a.** other insurance, we will pay only the proportion of the loss caused by any **Peril Insured Against** under this policy that the limit of liability applying under this policy bears to the total amount of insurance covering the property; or

**b.** a service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement includes a service plan, property restoration plan or warranty, even if it is characterized as insurance.

9. **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

10. **Suit Against Us.** No action shall be brought unless there has been full compliance with all of the policy provisions and the action is started within one year after inception of the loss or damage.

11. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

12. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

    a. reach agreement with you; or

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

13. **Abandonment of Property.** We need not accept any property abandoned by any *insured*.

14. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.

    If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. pays any premium due under this policy on demand if you have neglected to pay the premium;

    c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If the policy is canceled by us, the mortgagee shall be notified at least 20 days before the date cancellation takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

15. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

16. **Cancellation.**

    a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

    b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

        (1) When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect.

Case 3:14-cv-00083-TMB   Document 1-2   Filed 05/07/14   Page 30 of 88

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 31 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been material misrepresentation of fact which, if known to us, would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued.

This can be done by notifying you at least 31 days before the date cancellation takes effect.

**c.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. When the policy is canceled, the return premium will be pro rata.

**d.** If, when we cancel this policy, the return premium is not refunded with the notice of cancellation, we will refund it within 30 days after the date cancellation takes effect. If, when you cancel this policy, the return premium is not refunded when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**17. Non-Renewal.** We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 31 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

**18. Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**a.** a subsequent edition of this policy; or

**b.** an amendatory endorsement.

**19. Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

**20. Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

**21. Death.** If you die, we insure:

**a.** your legal representatives but only with respect to the property covered under the policy at the time of death;

**b.** with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**22. Nuclear Hazard Clause.**

**a.** *"Nuclear Hazard"* means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**b.** Loss caused by the *nuclear hazard* shall not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the **Perils Insured Against.**

**c.** This policy does not apply to loss caused directly or indirectly by *nuclear hazard,* except that direct loss by fire resulting from the *nuclear hazard* is covered.

**23. Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your dwelling, other structures and personal property. To assist you with this responsibility we will suggest annual changes, to your policy limits. These suggestions will be made effective on the renewal of your policy, and will be based on information provided to us by you or your agent about your dwelling's features and may be supplemented by public record or inspection. Labor and material cost trends for your area supplied to us by recognized residential construction cost specialists will be included. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

**24. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

1.  Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and:

    a.  your spouse, if a resident of the same household; or

    b.  your *domestic partner,* if a resident of the same household.

        *"Domestic partner"* means a person living as a continuing partner with you and:

        (1)  is at least 18 years of age and competent to contract;

        (2)  is not a relative, and

        (3)  shares with you the responsibility for each other's welfare, evidence of which includes:

            (a)  the sharing in the domestic responsibilities for the maintenance of the household; or

            (b)  having joint financial obligations, resources, or assets; or

            (c)  one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

        *Domestic partner* does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named insured.

    "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

2.  *"Actual cash value"*

    a.  When the damage to property is economically repairable, *actual cash value* means the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

    b.  When damage to property is not economically repairable or loss prevents repair *actual cash value* shall mean the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

    c.  Otherwise, *actual cash value* shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

    d.  *Actual cash value* shall not include taxes or any expenses unless incurred following the loss.

3.  *"Business"* means:

    a.  trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

    b.  any other activity, including civic or public, engaged in for money or other compensation.

    *Business* does not include volunteer activities for which no money is received other than payment for expenses incurred to perform the activity.

4.  *"Earthquake"* means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

5.  *"Fungi"* means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or byproducts produced, released by or arising out of *fungi,* including growth proliferation or spread of *fungi* or the current or past presence of *fungi.*

6.  *"Insured"* means:

    a.  you; and

    b.  so long as you remain a resident of the Described Location, the following residents of your household at the Described Location:

        (1)  your relatives;

        (2)  any other person under the age of 21 who is in the care of any person described in **6.a.** or **6.b.(1)** above.

7.  *"Motorized vehicle"* means all motorized land or amphibious conveyances for the transport of persons or property, including those used for recreational purposes. *Motorized vehicle* includes, but is not limited

Case 3:14-cv-00083-TMB   Document 1-2 Filed 05/07/14   Page 32 of 88

to, any motor vehicle, motorized golf cart, motorized bicycle or scooter, snowmobile, or motorized farm or earth moving equipment.

8. *"Pollutants or contaminants"* means any of the following:

    a. liquid fuels;

    b. lead or any materials containing lead;

    c. asbestos or any materials containing asbestos;

    d. radon;

    e. formaldehyde or any materials containing formaldehyde;

    f. electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

    g. carbon monoxide;

    h. pathogenic or poisonous biological materials;

    i. acids, alkalis or chemicals;

    j. radioactive substances; or

    k. any other irritant or contaminant including waste, vapor, fumes or odors.

# SPECIAL PROVISIONS — ALASKA

## COVERAGES

**OTHER COVERAGES**

Item **11.** *Fungi,* **Wet or Dry Rot, or Bacteria** is deleted and replaced by the following:

11. ***Fungi,* Wet or Dry Rot, or accompanying Bacteria.** If a covered loss under this policy results in *fungi,* wet or dry rot, or accompanying bacteria and direct physical loss to covered property ensues from the resulting *fungi,* wet or dry rot, or accompanying bacteria, we will pay:

   a. the cost to remove the *fungi,* wet or dry rot, or accompanying bacteria to the extent necessary to repair the damage from the covered cause of loss;

   b. the direct physical loss to covered property caused by the resulting *fungi,* wet or dry rot, or accompanying bacteria to the extent that it is considered damage from the covered cause of loss;

   c. up to $5,000 for the cost of remediation. Remediation means to treat, contain, remove or dispose of *fungi,* wet or dry rot, or accompanying bacteria beyond that which is required to repair or replace the covered property damaged by the covered cause of loss. Remediation includes any testing to detect, measure or evaluate *fungi,* wet or dry rot, or accompanying bacteria and any decontamination of the *residence premise* or property; and

   d. **Additional Living Expense** or **Fair Rental Value** loss covered under **Coverage D — Loss of Rent, Rental Value, and Additional Living Expense.**

   This coverage only applies when such loss or costs:

   e. are a result of a loss we cover that occurs during the policy period;

   f. are not excluded under **General Exclusions;** and

   g. only if all reasonable means are used to save and preserve the property from further damage.

   This coverage does not apply to loss to trees, shrubs, or other plants.

   Coverage provided under this additional coverage does not increase the limit of liability for coverages **A, B, C** and **D,** regardless of the number of locations or number of claims made.

   (This is item 8. in Landlord Protection Policy Condominium Broad Form, form P-4104/EP.)

## GENERAL EXCLUSIONS

The first paragraph in this section is deleted and replaced with:

We do not insure for loss caused by any of the following. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

Item **13.** *Fungi,* **Wet or Dry Rot, or Bacteria** is deleted and replaced by the following:

13. ***Fungi,* Wet or Dry Rot, or accompanying Bacteria,** meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or the natural growth, spread, proliferation, or presence of accompanying bacteria. This exclusion does not apply to the extent coverage is provided for in the **Other Coverage 11.** *Fungi,* **Wet or Dry Rot, or accompanying Bacteria** (or, as provided for in the **Other Coverage 8.** *Fungi,* **Wet or Dry Rot or accompanying Bacteria,** in Landlord Protection Policy Condominium Broad Form, form P-4104/EP.)

## GENERAL CONDITIONS

Item **3. Concealment or Fraud** is deleted and replaced by the following:

3. **Concealment or Fraud.** We provide coverage to no persons insured under this policy in any case involving misrepresentations, omissions, concealment of facts, or incorrect statements:

   a. That are fraudulent;

   b. That are material either to the acceptance of the risk, or to the hazard assumed by us; or

**c.** If we, in good faith, would not have:

    **(1)** Issued the policy or contract;

    **(2)** Issued a policy or contract in as large an amount, or at the same premium or rate; or

    **(3)** Provided coverage with respect to the hazard resulting in the loss;

    if the true facts had been made known to us as required either by the application for the policy or contract or otherwise.

Item **4.e.(3)** is deleted and replaced by the following:

    **(3)** submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse or any other *insured.* You shall not interfere with us examining any other insured. Such person has the right to have counsel present during any examination taken under oath.

    (This is 4.f.(3) in form P-4103/EP.)

Item **7. Appraisal** is deleted and replaced by the following:

**7. Appraisal**

If you and we fail to agree on the amount of loss, either may make a written demand for an appraisal of the loss. Within 10 days of receiving a written demand from the other, each party will:

**a.** Choose a competent appraiser; and

**b.** Notify the other of that choice.

**c.** The two appraisers will promptly choose a competent and impartial umpire. If an umpire cannot be agreed upon by the appraisers, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. Not later than 15 days after the umpire has been chosen, unless this time period is extended by the umpire, each appraiser will separately state, in writing, the amount of loss. If the appraisers submit a written report of an agreement on the amount of loss to us, that agreement will be binding. If they fail to agree, they will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding and set the amount of loss.

**d.** Each party will:

    **(1)** Pay its own counsel and adjuster fees; and

    **(2)** Bear those other expenses and fees which are incurred as a result of the appraisal, either in entirety or proportionately, as determined by the umpire.

Item **10. Suit Against Us** is deleted and replaced by the following:

**10. Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within three years after the inception of the loss or denial of claim, whichever is greater.

Item **12. Loss Payment** is deleted and replaced by the following:

**12. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

**a.** Reach an agreement with you;

**b.** There is an entry of a final judgment; or

**c.** There is a filing of an appraisal award with us.

The undisputed part of a claim will be paid in accordance with the terms of this Condition, even if other parts of the claim remain in dispute.

Item **16. Cancellation** Paragraph **b.** is deleted and replaced by the following:

**b.** We may cancel this policy only for the reasons stated in **(1)** below by letting you and, if you are 70 years of age or older, any person you designated to us in writing, know in writing of the date cancellation takes effect as stated in **(2)** below. This cancellation notice will be mailed to you at your

address last known to us, and we will obtain a certification of mailing. Proof of mailing will be sufficient proof of notice.

**(1)** We may cancel for:

    **(a)** Nonpayment of premium;

    **(b)** Conviction of the *insured* of a crime having as one of its necessary elements an act increasing a hazard insured against;

    **(c)** Discovery of fraud or material misrepresentation made by the *insured* or a representative of the *insured* in obtaining the insurance or by the *insured* in pursuing a claim under the policy;

    **(d)** Discovery of a grossly negligent act or omission by the *insured* that substantially increases the hazards insured against; or

    **(e)** Physical changes in the insured property that result in the property becoming uninsurable.

**(2)** We will let you and if you are 70 years of age or older, the person you designated to us in writing, know at least:

    **(a)** 10 days before the date cancellation takes effect if we cancel for:

        **(i)** Conviction of the *insured* of a crime having as one of its necessary elements an act increasing a hazard insured against; or

        **(ii)** Discovery of fraud or material misrepresentation made by the *insured* or a representative of the *insured* in obtaining the insurance or by the *insured* in pursuing a claim under the policy;

    **(b)** 20 days before the date cancellation takes effect if we cancel for nonpayment of premium; or

    **(c)** 30 days before the date cancellation takes effect if we cancel for any other reason.

**Item 16. Cancellation** Paragraph **d.** is deleted and replaced by the following:

    **d.** If we cancel this policy, we will return or credit any unearned premium to the agent or broker of record or directly to you before the effective date of cancellation.

    We will return or credit any unearned premium within 45 days after notice of cancellation is given if we cancel this policy for the reasons stated in Paragraphs **16.b.(1)** or **16.b.(2)** above, or for your failure or refusal to provide the information necessary to confirm exposure or necessary to determine this policy's premium.

---

## DEFINITIONS

---

The following is added to item **1.**

While we are offering coverage under this contract for *Domestic Partners,* please be advised that the State of Alaska does not recognize same-sex domestic partnerships. The State of Alaska cannot legally enforce this coverage language.

Item **8.b.** is deleted. This is item **9.b.** in Landlord Protection Policy Condominium Broad Form, P-4104/EP.

Item **8.f.** is deleted. This is item **9.f.** in Landlord Protection Policy Condominium Broad Form, P-4104/EP.

All other provisions of this policy apply.

## AGREEMENT

We will provide the insurance described in this optional coverage in return for the additional premium and compliance with all applicable provisions of the policy.

## COVERAGES

1. **Coverage L — Premises Liability**

   We cover the *insured's* liability for *bodily injury* or *property damage* caused by an *occurrence* arising out of the ownership, maintenance, occupancy or use of the *insured location,* not otherwise excluded.

   If a claim is made or a suit is brought against any *Insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

   a. pay up to our limit of liability for the damages for which the *Insured* is legally liable. Damages include pre-judgment interest awarded against the *Insured;* and

   b. provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

2. **Coverage M — Medical Payments to Others**

   We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury.* Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to any *Insured* other than *residence employees.* As to others, this coverage applies only:

   a. to any person on the *insured location* with the permission of any *Insured;* or

   b. to any person off the *insured location,* if the *bodily injury:*

      (1) arises out of a condition on the *insured location* or the ways immediately adjoining;

      (2) is caused by the activities of any *Insured;* or

      (3) is caused by a *residence employee* in the course of the *residence employee's* employment by any *Insured.*

3. **Additional Coverages**

   We cover the following in addition to the limits of liability:

   a. **Claim Expenses.** We pay:

      (1) expenses incurred by us and costs taxed against any *Insured* in any suit we defend;

      (2) premiums on bonds required in a suit defended by us, but not for bond amounts greater than our limit of liability for Coverage L. We are not obligated to apply for or furnish any bond; and

      (3) reasonable expenses incurred by any *Insured* at our request, including actual loss of earnings (but not loss of other income) up to $250 per day for assisting us in the investigation or defense of any claim or suit.

   b. **First Aid Expenses.** We will pay expenses for first aid to others incurred by any *Insured* for *bodily injury* covered under this policy. We will not pay for first aid to any *insured.*

   c. Any amount awarded by a court as attorney's fees, pursuant to Rule 82 of the Alaska Rules of Civil Procedure, with the following limitation:

      We will pay no more under this section than the amount which would be allowed under Rule 82(b)(1) to the prevailing party in a contested case if the judgment entered, including prejudgment interest, were equal to the applicable limits of this policy.

   Civil Rule 82(b)(1) provides the following attorney's fees to the prevailing party in contested cases:

   20 percent of the first $25,000 of a judgment or of a settlement of a claim.

   10 percent of the amount over $25,000 of a judgment or settlement.

Case 3:14-cv-00083-TMB   Document 37-10   Filed 05/07/14   Page 37 of 88

This **Limitation** means that some of the attorney's fees awarded by the court may not be covered. The **Insured** will have to pay any portion of the attorney's fees that are not covered.

The following table shows the effect of this limitation. The table lists certain typical policy limits and indicates the corresponding maximum amount of attorney's fees that we will cover:

| Policy Limits | Maximum Attorney's Fees We Will Cover |
|---|---|
| $ 25,000 | $ 5,000 |
| 50,000 | 7,500 |
| 100,000 | 12,500 |
| 250,000 | 27,500 |
| 500,000 | 52,500 |

Although Rule 82(b)(1) directs the court in a contested case to award attorney's fees in the amount of 10 percent of the judgment, plus an additional $2500, Civil Rule 82(b)(3) permits the court to award a greater amount if the facts justify such an increase.

Therefore, it is possible that the court, under some circumstances, could award attorney's fees exceeding the amount indicated in the above table. Nevertheless, we will pay no more than the amount provided in Civil Rule 82(b)(1), with the limitation stated above.

The **Insured** will be liable for any attorney's fees in excess of the limitation stated in this endorsement.

> **Example:** If judgment for $250,000 is entered against a person with $100,000 policy limits, the court would add an attorney's fee award of $27,500 (or **more** if the court felt the facts warranted). We would cover only $100,000 of the judgment, and $12,500 of the attorney's fees. The **Insured** would be liable to pay the remaining $150,000 of the judgment and $15,000 of the attorney's fees.

---

## EXCLUSIONS

1.  **Coverage L — Premises Liability** and **Coverage M — Medical Payments to Others** do not apply to *bodily injury* or *property damage*:

    a.  which is expected or intended by any *Insured* or which is the foreseeable result of an act or omission intended by any *Insured.*

    This exclusion applies to any *Insured* having the capacity to form intent, or whose capacity to form intent is impaired through the use of alcohol or illegal use of drugs.

    b.  which results from violation of:

    (1)  criminal law; or

    (2)  local or municipal ordinance,

    committed by, or with the knowledge or consent of any *Insured.*

    This exclusion applies whether or not any *Insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

    Exclusions a. and b. do not apply to *bodily injury* resulting from the use of reasonable force by any *Insured* to protect persons or property. However, use of force by any *Insured* while using alcohol or while illegally using drugs, voids this exception.

    Exclusions a. and b. apply even if such *bodily injury* or *property damage* is of a different kind or degree than expected or intended, or such *bodily injury* or *property damage* is sustained by a different person or persons than expected or intended.

    c.  arising out of *business* pursuits or employment of any *Insured.*

    This exclusion does not apply to:

    (1)  incidental activities which are ordinary to non-*business* pursuits; or

      **(2)** the rental or holding for rental of an *Insured location:*

          **(a)** for the exclusive use as a residence;

          **(b)** in part, unless intended for the exclusive use as a residence by more than two roomers or boarders; or

          **(c)** in part, as an office, school, studio or private garage;

**d.** arising out of the rendering or failing to render professional services;

**e.** arising out of any premises:

      **(1)** owned by any *Insured;*

      **(2)** rented to any *Insured;*

      **(3)** rented to others by any *Insured;*

      that is not an *Insured location.*

**f.** arising out of the ownership, rental, maintenance, occupancy, operation, use, loading or unloading or the entrustment by the *Insured* to any person of:

      **(1)** an *aircraft,* hovercraft, aircushion;

      **(2)** a *motorized vehicle,* other than a *motorized vehicle* used solely for the maintenance of an *Insured location* while on an *Insured location,* which is:

          **(a)** not designed for travel on public roads;

          **(b)** not subject to motor vehicle registration, licensing or permits; and

          **(c)** is not a motorized golf cart or vehicle designed for use as a golf cart or any similar vehicle;

      **(3)** any trailers, or semitrailer which is being carried on, towed by, or hitched to a *motorized vehicle;* or

      **(4)** any watercraft. This exclusion does not apply while the watercraft is stored.

**g.** caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

**h.** arising out of:

      **(1)** the entrustment by any *Insured* to any person;

      **(2)** failure to supervise or negligent supervision by any *Insured* of any person;

      **(3)** any act, decision or omission by any *Insured;*

      **(4)** any liability statutorily imposed on any *Insured;* or

      **(5)** any liability assumed through an unwritten or written agreement by any *Insured;*

      with regard to any *aircraft,* hovercraft, aircushion, *motorized vehicle,* watercraft or *personal watercraft* which is excluded by this endorsement;

**i.** which arises out of the transmission of a communicable disease by any *Insured;*

**j.** arising out of physical or mental abuse, corporal punishment, sexual molestation or sexual harassment; or

**k.** arising out of the use, sale, manufacture, delivery, transfer or possession of a controlled substance(s) including their paraphernalia. Controlled substances, as defined by state or Federal law, include but are not limited to any form, derivative, mixture, or any quantity of amphetamines, barbiturates, cocaine, LSD, marijuana, methamphetamine, PCP, and all narcotic drugs.

    This exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

**2.** **Coverage L — Premises Liability does not apply to:**

**a.** Liability:

      **(1)** for any loss assessment charged against you as a member of an association, corporation or community of property owners;

**(2)** under any other contract or agreement entered into by an *Insured.* However, this exclusion does not apply to written contracts:

    **(a)** that directly relate to the ownership, maintenance or use of an *Insured location;* or

    **(b)** where the liability of others is assumed by you prior to an *occurrence;*

    unless excluded in **(1)** above or elsewhere in this policy;

**b.** *punitive damages* awarded against any *insured;*

**c.** liability arising directly or indirectly, in whole or in part, out of actual or alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any *fungi,* bacteria or other microbes.

This exclusion includes:

**(1)** the cost of testing for, or monitoring of *fungi,* bacteria or other microbes, or tearing out or removal of property to facilitate testing or monitoring;

**(2)** disclosure or failure to disclose, advise or failure to advise, of *fungi,* bacteria or other microbes, or of conditions contributing to any ensuing *fungi,* bacteria or other microbes; or

**(3)** any liability imposed upon any *Insured* by any governmental authority.

This exclusion does not apply to *bodily injury* arising from *fungi* or bacteria intended for consumption or bacteria naturally occurring in and arising from foods.

**d.** liability arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of *pollutants* at any time. This includes any loss, cost or expense arising out of any:

**(1)** request, demand or order that any *Insured* or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of *pollutants;* or

**(2)** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of *pollutants;*

**e.** *property damage* to property owned by any *Insured.* This includes costs or expenses incurred by any *Insured* or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an *Insured location;*

**f.** any written or oral agreement involved in the sale or transfer of real property, including but not limited to the following:

**(1)** known or unknown property or structural defects;

**(2)** known or hidden defects in the plumbing, heating, air conditioning or electrical systems;

**(3)** known or unknown soil conditions or drainage problems; or

**(4)** concealment or misrepresentation of any known defects.

**g.** *property damage* to property rented to a tenant of any *Insured;*

**h.** *property damage* to property rented to, occupied or used by or in the care of the *Insured.*

This exclusion does not apply to *property damage* caused by fire, smoke or explosion;

**i.** *bodily injury* to any *insured* eligible to receive any benefits required to be provided or voluntarily provided by the *Insured* under any workers' compensation, non-occupational disability, or occupational disease law;

**j.** *bodily injury* or *property damage* for which any *Insured* under this policy is also an *Insured* under a nuclear energy liability policy or would be an *insured* but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

**k.** *bodily injury* to any *Insured.*

This exclusion also applies to any claim made or suit brought against you or any *Insured:*

**(1)** to repay; or

Exhibit B
Case 3:14-cv-00083-TMB   Document 10-2   Filed 05/07/14   Page 40 of 88

    (2)   share damages with;

another person who may be obligated to pay damages because of *bodily injury* to any *insured;*

l.    liability arising from any transmission, upload or download, whether intentional or not, of computer code, programs or data;

m.    liability arising out of any animal that any *insured* acquires, owns or keeps.

**3.**    **Coverage M — Medical Payments to Others,** does not apply to *bodily injury;*

a.    to an *insured;*

b.    to any person off the *residence premises* unless the *bodily injury* arises out of condition on the ways immediately adjoining the *residence premises;* .

c.    to any employee if the *bodily injury* arises out of employment by any *insured* or tenant;

d.    to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

e.    from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these; or

f.    to any tenant or other person, regularly residing on any part of the *residence premises;*

g.    to any *insured* engaged in maintenance repair, alteration, demolition or new construction of the *residence premises.*

---

## CONDITIONS

**1.**    **Policy Period.** This coverage applies only to *bodily injury* or *property damage* which occurs during the policy period.

**2.**    **Limit of Liability.** Regardless of the number of *insureds,* claims made or persons injured, our total liability under Coverage L stated in this policy for all damages resulting from any one *occurrence* shall not exceed the limit of liability for Coverage L stated in the Declarations.

Our total liability under Coverage M for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage M stated in the Declarations.

**3.**    **Severability of Insurance.** This insurance applies separately to each *insured.* This condition shall not increase our limit of liability for any one *occurrence.*

**4.**    **Duties After An Occurrence.** In case of an *occurrence,* the *insured* shall perform the following duties that apply. We have no duty to provide coverage under this endorsement if your failure to comply with the following duties is prejudicial to us. The *insured* shall help us by seeing that these duties are performed:

a.    give written notice to us or our agent as soon as practicable, which sets forth:

    (1)    the identity of the policy and *insured;*

    (2)    reasonably available information on the time, place and circumstances of the accident or *occurrence;* and

    (3)    names and addresses of any claimants and available witnesses;

b.    cooperate with us in the investigation, settlement or defense of any claim or suit;

c.    promptly forward to us every notice, demand, summons or other process relating to the *occurrence;*

d.    at our request, assist in:

    (1)    making settlement;

    (2)    the enforcement of any right of contribution or indemnity against any person or organization who may be liable to any *insured;*

    (3)    the conduct of suits and attend hearings and trials;

    (4)    securing and giving evidence and obtaining the attendance of witnesses;

e.    no *insured* shall, except at such *insured's* own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the *bodily injury.*

Case 3:14-cv-00083-TMB   Document 1-28   Filed 05/07/14   Page 41 of 88

**5. Duties of an Injured Person — Coverage M — Medical Payments to Others.** The injured person or someone acting on behalf of the injured person shall:

   **a.** give us written proof of claim, under oath if required, as soon as practicable; and

   **b.** execute authorization to allow us to obtain copies of medical reports and records;

the injured person shall submit to physical examination by a physician selected by us when and as often as we reasonably require.

**6. Payment of Claim — Coverage M — Medical Payments to Others.** Payment under this coverage is not an admission of liability by any *insured* or us.

**7. Suit Against Us.** No action shall be brought against us unless there has been full compliance with all of the policy provisions.

No one shall have any right to join us as a party to any action against any *insured.* Further, no action with respect to Coverage L shall be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

**8. Bankruptcy of any Insured.** Bankruptcy or insolvency of any *insured* shall not relieve us of any of our obligations under this policy.

**9. Other Insurance — Coverage L — Premises Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**10. Our Right to Recover.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

Subrogation does not apply to **Coverage M — Medical Payments to Others.**

**11. Interest.** We will pay the interest on judgments, subject to all of the following:

   **a.** any notice, demand, summons, judgment, or any process is promptly forwarded to us as required by Condition **d.(3)** under **Duties After An Occurrence.**

   **b.** we accept the defense or agree to the judgment.

   **c.** we will pay the interest on that part of the judgment that is covered and that does not exceed our applicable limit of liability.

   **d.** we will pay that which accrues after entry of the judgment and before we pay, tender, or deposit in court.

   **e.** if we appeal the judgment, we will pay interest on the entire judgment.

   **f.** post-judgment interest is in addition to the applicable limit of liability.

   **g.** where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

---

The following are additions or revisions to the policy definitions with respect to the coverage provided by this endorsement.

**DEFINITIONS**

**1.** *"Aircraft"* means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

**2.** *"Bodily injury"* means:

   **a.** bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

   **b.** personal injury,

      **(1)** arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

         **(a)** false arrest, detention or imprisonment;

         **(b)** malicious prosecution;

Exhibit B
Case 3:14-cv-00083-TMB   Document 1-28   Filed 05/07/14   Page 42 of 88

      (c) the wrongful eviction from, wrongful entry into, or invasion of the right to private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of any *Insured;*

      (d) oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

      (e) oral or written publication of material that violates a person's right of privacy.

  (2) We do not cover personal injury:

      (a) caused by or at the direction of any *insured* with the knowledge that the act would violate the rights of another or would inflict personal injury;

      (b) arising out of a criminal act committed by or at the direction of any *Insured;*

      (c) sustained by any person as a result of an offense directly or indirectly related to the employment of this person by any *Insured;*

      (d) arising out of civic or public activities performed for pay by any *Insured;* or

      (e) arising out of physical abuse, corporal punishment or sexual molestation.

  (3) Under **Exclusions, Coverage L — Premises Liability and Coverage M — Medical Payments to Others** exclusions **1.a.b.i.** and **j.** do not apply to personal injury. All other exclusions of this endorsement apply.

**3.** *"Insured"* also means:

  **a.** you; and

  **b.** so long as they remain a resident of your household, the following residents:

    (1) your relatives; and

    (2) any other person under the age of 21 who is in the care of any person named above.

**4.** *"Insured location"* means the *residence premises.*

**5.** *"Occurrence"* means an accident, including exposure to conditions which results in *bodily injury* or *property damage* during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence.*

**6.** *"Personal Watercraft"* means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

**7.** *"Property damage"* means physical injury to, or destruction of, or loss of use of tangible property.

**8.** *"Punitive Damages"* means damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, including exemplary or aggravated circumstances damages, or damages which are awarded for any purpose other than compensatory damages for *bodily injury* or *property damage.*

**9.** *"Residence employee"* means an employee of any *Insured* who performs duties in connection with the maintenance or use of the *residence premises,* including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *Insured.*

A *residence employee* does not include a temporary employee who is furnished to an *insured* to substitute for a permanent *residence employee* on leave or to meet seasonal or short-term workload conditions.

**10.** *"Residence premises"* means:

  **a.** the one to four family dwelling or condominium; or

  **b.** that part of any other building;

which is shown as the Described Location in the Declarations.

*Residence premises* also includes other structures and grounds at the Described Location.

All other provisions of this policy apply.

This policy is signed on our behalf by our President and Secretary.



Paul Condrin
President



Dexter Legg
Vice President and Secretary

This policy includes copyrighted material of
Insurance Services Office, Inc. with its permission.

CHO-1227/EP 11/89
G19

## ADDITIONAL INTEREST ENDORSEMENT

**AGENT:**
ALASKA USA INS BROKERS LLC
851 E USA CIR STE 102
WASILLA     AK   99654-7188

**INSURED:**
LEONARD KELLEY

**AGENT TELEPHONE: (907) 352-8300**

SUTTON STORAGE LLC
821 N STREET
ANCHORAGE AK   99501

Ill.l.l..l..l.ll.ll.....ll.ll..l..ll.l.ll..l..ll.ll..ll.l.l.l

← **ADDITIONAL INTEREST**

**TYPE OF INTEREST:**
LLC - LIMITED LIABI

**EFFECTIVE DATE:**
NOV. 16 2011

### DEFINITIONS

The definition of **insured** contained in this policy is amended to include the person(s) and/or organization(s) listed above, subject to the following conditions:

### SECTION I — PROPERTY COVERAGES

[X] If this box is checked, this additional interest is applicable to Coverage **A** — Dwelling, Coverage **B** — Other Structures, or Coverage **C** — Personal Property.

Loss payments shall be made as follows:

1st — To the Mortgagee named in the Declarations or Statement of Coverage, as its interest in the damaged property may appear;

2nd — To the persons or organizations listed as mortgagees on this or other endorsement, in their order of listing, as their interest(s) in the damaged property may appear;

3rd — To all other persons or organizations listed on this or other endorsement, in their date order of listing, as their interest(s) in the damaged property may appear;

4th — The balance, if any, to the named **insured.**

### SECTION II — LIABILITY COVERAGES

[ ] If this box is checked, this additional interest is applicable to Option **E** — Comprehensive Personal Liability, or Option **H** — Premises Liability, but only with respect to the **residence premises.**

This coverage does not apply to **bodily injury** to any employee arising out of or in the course of the employee's employment by the person(s) or organization(s) named on this or other endorsement.

### SECTION I and SECTION II — CONDITIONS

If this policy is canceled or not renewed by us, all additional interests will be notified in writing.

All other provisions of this policy apply.

**SAFECO INSURANCE COMPANY OF AMERICA**

ADDITIONAL INTEREST'S COPY

DATE PREPARED: NOV. 21 2011

P-3105/EP R2 3/87
G6

Exhibit B
Exhibit C pg. 1 of 1
Case 3:14-cv-00083-TMB   Document 51-2   Page 45 of 288   Filed 05/07/14   Page 45 of 88



Safeco Insurance Company of America
Inside Property Loss Spec I - PL
PO Box 515097

Los Angeles, CA 90051-5097

Mailing Address:
PO Box 515097
Los Angeles, CA
90051-5097

Phone:   (800) 332-3226
         (509) 944-8352
Fax:     (888) 268-8840

A Liberty Mutual Company

April 23, 2012

Leonard Kelley
821 N St Ste 205
Anchorage, AK  99501-3285

Insured Name:      Leonard Kelley
Policy Number:     OH1759199
Loss Date:         April 20, 2012
Claim Number:      186436494052

Dear Leonard Kelley:

We are in the process of investigating your claim. Following is a brief outline of the coverage provided by your Safeco Insurance Company of America Homeowners policy. There may be certain exclusions, limitations of coverage and/or policy conditions that apply to this claim. If we find this to be the case, we will inform you as soon as possible. Any failure to quote or refer to any specific policy provision in the body of this letter or otherwise is not a waiver to those provisions.

Your policy number OH1759199 provides coverage for the period of April 23, 2012 to April 23, 2012 with a deductible of $5,000.00.

Please feel free to contact me if you have any questions regarding your coverage.

Sincerely,

*Patty Ruggiero*

Patty Ruggiero
Inside Property Loss Spec I - PL
Safeco Insurance Company of America
(800) 332-3226 Ext: 763-8352
(509) 944-8352 Fax: (888) 268-8840
patricia.ruggiero@safeco.com

Enclosure

Your policy provides the following coverages:

Coverage A: Dwelling. This covers damages to your dwelling up to the policy limits of $453,400.00 for covered causes of loss.

Coverage B: Other Structures: This covers damage to other structures up to the limit of $45,340.00 for covered causes of loss.

Coverage C: Contents. This covers loss to your personal property up to the policy limits of $2,500.00 for covered causes of loss. There are special limits for certain types of personal property that may apply. Please begin preparing a detailed inventory of your loss. To assist you, we may supply you with Contents Valuation Reports. These documents will help you organize the information necessary to resolve your claim. You may use receipts, owners manuals or other documents available to support your claim.

Coverage D: Loss of Use. If your home is uninhabitable as a result of a covered loss, you may be asked to decide between two choices.
A. Fair Rental Value. Your adjuster can calculate the fair rental value of your home by determining the rental value of comparable homes in your area. Payment will be for the shortest time necessary to repair or replace the damaged property.
B. Additional Living Expenses. You may choose to keep track of your living expenses while your home is uninhabitable. Safeco Insurance Company of America will reimburse you for any increase in your additional living expenses. If you choose the Additional Living Expenses option, you will be required to present all receipts to document your claim.



Safeco Insurance™

A Liberty Mutual Company

Safeco Insurance Company of America
Inside Property Loss Spec 1 - PL
PO Box 515097

Los Angeles, CA 90051-5097

Mailing Address:
PO Box 515097
Los Angeles, CA
90051-5097

Phone: (800) 332-3226
        (509) 944-8352
Fax:    (888) 268-8840

May 10, 2012


Leonard Kelley
821 N St, Ste 205
Anchorage, AK 99501-3285


Insured Name:     Leonard Kelley
Policy Number:    OH1759199
Loss Date:        April 20, 2012
Claim Number:     186436494052

Dear Leonard Kelley:

We have received notice of your loss located at 12164 N GLENN HWY, SUTTON, AK, 99674, which reported occurred on or about April 20, 2012.

Please note that at this time Safeco Insurance Company of America cannot confirm or deny coverage for this loss. The purpose of this letter is to advise you that an investigation into this matter will be conducted under a Reservation of Rights so that the investigation can continue without prejudice of your rights or Safeco Insurance Company of America's rights under the policy.

While we rely on the entirety of the insurance contract for our coverage position, the remainder of this letter will point out certain sections which may be particularly applicable to this claim. Please refer to your Safeco Insurance Company of America P-4103EP 7/08 LANDLORD PROTECTION POLICY - SPECIAL FORM and Alaska Special Provisions which state in pertinent part:

    GENERAL CONDITIONS ...

    4. Your Duties After Loss. In case of a loss to which this insurance may apply, you must perform the following duties:

        a. cooperate with us in the investigation, settlement or defense of any claim or suit;
        b. give immediate notice to us or our agent;
        c. notify the police in case of loss by theft;

d. protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;
e. prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, actual cash value and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. as often as we reasonably require:

(1) exhibit the damaged and undamaged property;
(2) provide us with records and documents we request and permit us to make copies; and
(3) submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse or any other insured. You shall not interfere with us examining any other insured;

g. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss;
(2) interest of the insured and all others in the property involved and all encumbrances on the property;
(3) other insurance which may cover the loss;
(4) changes in title or occupancy of the property during the term of the policy;
(5) specifications of any damaged building and detailed repair estimates;
(6) an inventory of damaged personal property described in 4.e.; and
(7) receipts for Additional Living Expenses incurred or records supporting the Loss of Rent and Rental Value. ...

COVERAGES ...

PERILS INSURED AGAINST
COVERAGE A — DWELLING AND COVERAGE B — OTHER STRUCTURES
We insure for accidental direct physical loss to the property described in Coverages A and B except:

1. losses excluded under General Exclusions; ...

7.    a. wear and tear, marring, scratching, deterioration; ...

e. settling, cracking, shrinking, bulging, or expansion of pavements, patios, bulkheads, foundations, footings, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;
f. birds, vermin, rodents, insects or domestic animals;
g. pressure from or presence of plant roots.

If any of these cause water to escape from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water, unless otherwise excluded, and we cover the cost of tearing out and replacing any part of the dwelling necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment; or roof drain, gutter down spout or similar fixtures or equipment.

Under items 2. thru 7. any ensuing loss, not excluded or excepted in this policy, is covered. ...

GENERAL EXCLUSIONS
We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area. ...

2. Earth Movement, meaning:

    a. the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, movement resulting from improper compaction, site selection or any other external forces, erosion including collapse or subsidence of land along a body of water as a result of erosion or undermining resulting from the action of water. This includes the channeling of a river or stream;

    b. erosion, shifting or displacement of materials supporting the foundation; a ...

This exclusion applies whether the earth movement is caused by or resulting from human or animal forces or any act of nature. ...

10. Planning, Construction or Maintenance, meaning faulty, inadequate or defective: ...

    d. maintenance;

of property whether on or off the Described Location by any person or organization. However, any ensuing loss not excluded or excepted by any other provision in this policy is covered. ...

12. Weather that contributes in any way with a cause or event excluded in this section to produce a loss.
However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

13. Fungi, Wet or Dry Rot, or Bacteria meaning the presence, growth, proliferation or spread of fungi, wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for in the Other Coverage 11. Fungi, Wet or Dry Rot, or Bacteria under Dwelling Coverages.

14. Collapse, except as provided in Other Coverages, Collapse. However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

15. Any presence or condensation of humidity, moisture or vapor; or the continuous or repeated seepage or leakage of water or steam that occurs over a period of weeks, months or years, including but not limited to that from, around, through or contained by:

> a. plumbing, heating, or air conditioning systems or fire protective or other sprinkler systems;
> b. household appliances; or
> c. roofs, roofing materials, gutters, downspouts, skylights, windows, doors, vents, insulation and siding or other exterior finish materials, or any part, including the application or use of accessories, flashing, caulking or sealants.

However, any ensuing loss not excluded or excepted by any other provision in this policy is covered. ...

OTHER COVERAGES ...

8. Collapse.

> a. We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

>> (1) The perils named under Perils Insured Against, Coverage C — Personal Property;
>> (2) Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
>> (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;
>> (4) Weight of contents, equipment, animals or people;
>> (5) Weight of rain which collects on a roof; or
>> (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

> b. Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under a.(2) through (6) above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

c. With respect to this coverage:

> (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose;
> (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;
> (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building; or
> (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

This coverage does not increase the limit of liability that applies to the damaged covered property. ...

11. Fungi, Wet or Dry Rot, or accompanying Bacteria. If a covered loss under this policy results in fungi, wet or dry rot, or accompanying bacteria and direct physical loss to covered property ensues from the resulting fungi, wet or dry rot, or accompanying bacteria, we will pay:

> a. the cost to remove the fungi, wet or dry rot, or accompanying bacteria to the extent necessary to repair the damage from the covered cause of loss;
> b. the direct physical loss to covered property caused by the resulting fungi, wet or dry rot, or accompanying bacteria to the extent that it is considered damage from the covered cause of loss;
> c. up to $5,000 for the cost of remediation. Remediation means to treat, contain, remove or dispose of fungi, wet or dry rot, or accompanying bacteria beyond that which is required to repair or replace the covered property damaged by the covered cause of loss. Remediation includes any testing to detect, measure or evaluate fungi, wet or dry rot, or accompanying bacteria and any decontamination of the residence premise or property; and
> d. Additional Living Expense or Fair Rental Value loss covered under Coverage D — Loss of Rent, Rental Value, and Additional Living Expense.

This coverage only applies when such loss or costs:

> e. are a result of a loss we cover that occurs during the policy period;
> f. are not excluded under General Exclusions; and
> g. only if all reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to trees, shrubs, or other plants.
Coverage provided under this additional coverage does not increase the limit of liability for coverages A, B, C and D, regardless of the number of locations or number of claims made. ...

We are asking your cooperation in providing the following as soon as possible:

1.   We have asked an Engineer, Nelson Franklin, to inspect your damaged property and to advise the origin and cause of the damage.

After we receive Mr. Franklin's report and review your policy, we will  determine whether or not coverage will apply for this loss.  We will then contact you to discuss your claim further.

The information being requested is necessary to allow us to properly investigate coverage under this policy and is made in accordance with the following policy provisions stated above.

Although we have quoted specific policy language, please refer to your policy in its entirety, as all terms, conditions and exclusions apply.   Safeco Insurance Company of America respectfully continues to reserve any and all rights and defenses which may now exist or which may arise in the future. These rights and defenses specifically include, but are not limited to, the right to a properly completed proof of loss, examinations under oath, inspection of property, appraisal and passage of time. No waiver or estoppel of any kind is intended or should be inferred. We do not waive any of the terms, conditions or requirements of the policy.

If you have questions or concerns regarding the application of coverage or limitation of coverage in this matter, please do not hesitate to contact us to discuss those concerns.

Sincerely,

*Patty Ruggiero*

Patty Ruggiero
Inside Property Loss Spec I - PL
Safeco Insurance Company of America
(800) 332-3226 Ext: 763-8352
(509) 944-8352 Fax: (888) 268-8840
patricia.ruggiero@safeco.com

821 N Street No. 205

Anchorage, Alaska 99501

May 28, 2012

Ms. Perl Locker

Safeco Insurance

PO Box 515097

Los Angeles, Ca 90051

Dear Ms. Locker:

Claims have been filed for deck collapse/damage, interior damage for water/mold, rental loss, and
personal property loss. The house is presently uninhabitable.

The property has been inspected by Safeco's assigned contractor (photographs taken and report made).
The property has been made available to Safeco engineer. In short, Proof of Loss has occurred. Time is
of the essence and delay damages are not waived.

If Safeco has any specific facts that the aforementioned losses/claims are not covered; provide said
information to the undersigned.

Safeco's "reservation of right" is rejected; your insured claims for coverage must be denied or accepted.

Sincerely,

Sutton Storage, LLC,

Leonard T. Kelley for NPBI

821 N Street No. 205
Anchorage, Alaska 99501
June 6, 2012

Ms. Perl Locker
Safeco Insurance
PO Box 515097
Los Angeles, Ca. 90051

Dear Ms. Locker

My wife advised me that you called on 6/5/2012 and advised:

1.  That you expected to get the engineer's report regarding the collapse-within the near future.
2.  I could file for the interior matter as a separate claim.

The interior loss claim was filed with Safeco on 5/6/2012, both by email and by Paul Davis Co. I assumed it would be handled with the collapse claim, but Safeco can handle it as a separate claim if they wish.

Safeco should finish its' investigation of both losses and adjust the losses.

Sincerely yours,

Leonard T. Kelley

Enclosure: copy of email

Exhibit F pg. 2 of 5
Exhibit B
Case 3:14-cv-00083-TMB   Document 6-11   Filed 05/07/14   Page 55 of 88

**From:** len8185 <len8185@aol.com>
**To:** PEARL.LOCKER <PEARL.LOCKER@SAFECO.COM>
**Subject:** Re: claim #1864 3649 4052 - 12164 N Glenn Hwy Sutton, AK
**Date:** Tue, Jun 19, 2012 7:48 am
**Attachments:** Picture_(Device_Independent_Bitmap)_1.jpg (866)

1)travis burnett-we got the keys in may 2)peters creek 3)npbi inc is the managing partner for sutton storage llc 4)oct/nov-2011 5)there is no management co but see4 6)deck up and water on.7)no  and no .8)tenant advised water off  and system drained.9)wood is a source of heat-tenant responsible to heat unit. 10)oil tank on site 11)sutton storage did not put oil in tank and has no receipt 12)no idea 13)sutton storage pays elect. 14)no response.15)sutton storage is an llc 16)yes 17)i do not work for but an owner of npbi the managing llc partner. the property is locked and posted and unoccupiable.send enginer reportand finish investgation.if you need statement under oath advise directly-time is of the essense.ltk for sutton stor

-----Original Message-----
From: Locker, Pearl <PEARL.LOCKER@SAFECO.COM>
To: len8185 <len8185@aol.com>
Sent: Mon, Jun 18, 2012 3:04 pm
Subject: claim #1864 3649 4052 - 12164 N Glenn Hwy Sutton, AK

Dear Mr. Leonard,

I am writing in hopes that we are able to connect via email.

We have additional questions regarding your claim.

1. Who was the last tenant in the property and when did they move out?
2. Where are you located in relationship to this property?
3. Do you look after/take care of the property or does a property management group? If so, who is the property managerment?
4. When was the last time you were at the property prior to this loss (collapse deck and interior water damage)?
5. When was the property management company last at the property prior to this loss (collapse deck and interior water damage)?
6. What was the condition of the property at that time?
7. It is our understanding that the tenant moved out sometime March 2011. Is this correct? was the property winterized?
8. Was the water shut off and the systems drained of water?
9. It appears the main heat source in the property is a wood burning stove. Is this correct? If so, who was burning wood to maintain heat in the building while the home was vacant?
10. It appears the upstairs is heated by oil heaters.  Is there a tank on site?
11. When was it last filled? Do you have receipts showing the last time it was filled?
12. How full is it now?
13. Who pays for heating oil and utilities when there is no tenant?
14. In the initial letter regarding this claim, you noted Sutton Storage LLC suffered a collapsed loss, not you
15. Who is Sutton Storage LLC in relationship to you?
16. Do they own the property?
17. Do you work for them?

Please be advised that we cannot confirm or deny coverage until our investigation is complete. Once our investigation is complete, we will be able to determine our coverage position. Please do what you can to protect the property from further harm.

I appreciate your assistance.

Exhibit B

Exhibit F pg. 3 of 5

Case 3:14-cv-00083-TMB   Document 61-2   Filed 05/07/14   Page 56 of 88

Sincerely,

Pearl Locker, AIC
Inside Property Loss Specialist II - Personal Lines
(509)944-8365
Fax: (888)268-8840
pcarl.locker@safeco.com



Note: The information contained in this message is confidential. If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, do not distribute or copy this communication. If you have received this communication in error, please notify us immediately by replying to the sender. Thank you for your cooperation.

1 Attached Images

821 N Street No. 205
Anchorage, Alaska. 99501
Jun3 26, 2012

Ms. Perl Locker
Safeco Insurance
PO Box 515097
Los Angeles, CA 90051

Dear Ms. Locker,

The claim of loss was filed in April. Safeco is handling both the collapse and water loss under claim number 1864-3649-4052 and Safeco has all the information to conclude Sutton Storage's LLC claim. Nevertheless, please provide Sutton Storage copies of:

1. The damage report, repair estimates and photographs.
2. Engineer report and photographs.
3. Safeco's investigation report.
4. Any other report document which would be relevant to either coverage or damages.

The summer building/repair season is short so time is of the essence.

Give us Safeco's earliest response.

Sincerely yours,

Leonard T. Kelley

821 N Street No. 205
Anchorage, Alaska  99501
July 1, 2012

Perl Locker
PO Box 525097
Los Angeles, Ca. 90051

Dear Ms. Locker:

Safeco's letter of 6/18/2012 has been received. Safeco is aware of a potential coverage defense claims. We request that Safeco disclose any possible coverage defenses.  Safeco must either accept coverage or disclaim coverage.


Signed

Leonard T. Kelley
For Sutton Storage



**Safeco Insurance**™

A Liberty Mutual Company

Safeco Insurance Company of America
Inside Property Loss Specialist II - Personal Lines
PO Box 515097
Los Angeles, CA 90051

Mailing Address:
PO Box 515097
Los Angeles, CA 90051

Phone:   (800) 332-3226
            (509) 944-8365
Fax:      (888) 268-8840

July 18, 2012

Leonard Kelley
821 N St Ste 205
Anchorage, AK  99501-3285

| | |
|---|---|
| Insured Name: | Leonard Kelley |
| Policy Number: | OH1759199 |
| Loss Date: | April 20, 2012 |
| Claim Number: | 186436494052 |

Dear Mr. Kelley:

We are sending a check under separate cover in the amount of $38,492.05 in payment of your claim. This payment reflects the cost of your damaged property less the deductible and any applicable depreciation. Here's the payment breakdown:

| | |
|---|---|
| Replacement Cost Value | $45,508.29 |
| Less Depreciation | (2,016.24) |
| Actual Cash Value | $43,492.05 |
| Less Deductible | (5,000.00) |
| Net Claim | $38,492.05 |

Your policy provides 'Replacement Cost Coverage'. This coverage will assist you, by paying the full cost of the items you repair or replace. It is important for you to understand that this coverage applies only to items that are actually repaired or replaced.

Dwelling
Enclosed is a copy of Engineer's report for your records. Also enclosed is an estimate for the repair to your property. Please present the estimate to your choice of contractors and have them contact us if there are any questions regarding our damage assessment. If your loss was depreciated, please submit the completed repair bill to claim the full replacement cost in accordance with your policy.

We at Safeco appreciate your business and the trust you have placed in us as your insurer of choice. We are always looking for ways to improve our claims service. If you have any suggestions for improvement, please let me know. You may receive a survey from Safeco in the near future. If you would rate your claim experience anything less than a "10", please let us know as soon as possible. Our goal is to exceed your expectations at every opportunity.

If you have any questions or concerns, please feel free to contact me.

Sincerely,

Pearl Locker, AIC
Inside Property Loss Specialist II - Personal Lines
Safeco Insurance Company of America
(800) 332-3226 Ext: 763-8365
(509) 944-8365 Fax: (888) 268-8840
pearl.locker@safeco.com



Safeco Insurance ™

A Liberty Mutual Company

Safeco Insurance Company of America
Inside Property Loss Specialist II - Personal Lines
PO Box 515097
Los Angeles, CA 90051

Mailing Address:
PO Box 515097
Los Angeles, CA 90051

Phone: (800) 332-3226
(509) 944-8365
Fax: (888) 268-8840

July 18, 2012

Leonard Kelley
821 N St Ste 205
Anchorage, AK 99501-3285

| | |
|---|---|
| Insured Name: | Leonard Kelley |
| Policy Number: | OH1759199 |
| Loss Date: | January 30, 2012 |
| Claim Number: | 169813205039 |

Dear Mr. Kelley:

We are in the process of investigating your claim. Following is a brief outline of the coverage provided by your Safeco Insurance Company of America Homeowners policy. There may be certain exclusions, limitations of coverage and/or policy conditions that apply to this claim. If we find this to be the case, we will inform you as soon as possible. Any failure to quote or refer to any specific policy provision in the body of this letter or otherwise is not a waiver to those provisions.

Your policy number OH1759199 provides coverage for the period of November 16, 2011 to November 16, 2012 with a deductible of $5,000.00.

Please feel free to contact me if you have any questions regarding your coverage.

Sincerely,

Pearl Locker, AIC
Inside Property Loss Specialist II - Personal Lines
Safeco Insurance Company of America
(800) 332-3226 Ext: 763-8365
(509) 944-8365 Fax: (888) 268-8840
pearl.locker@safeco.com

Enclosure

CA1655-AK 06/09

Exhibit I pg. 1 of 8

Exhibit B

Your policy provides the following coverages:

Coverage A: Dwelling. This covers damages to your dwelling up to the policy limits of $453,400.00 for covered causes of loss.

Coverage B: Other Structures: This covers damage to other structures up to the limit of $45,340.00 for covered causes of loss.

Coverage C: Contents. This covers loss to your personal property up to the policy limits of $2,500.00 for covered causes of loss. There are special limits for certain types of personal property that may apply. Please begin preparing a detailed inventory of your loss. To assist you, we may supply you with Contents Valuation Reports. These documents will help you organize the information necessary to resolve your claim. You may use receipts, owners manuals or other documents available to support your claim.

Coverage D: Loss of Use. If your home is uninhabitable as a result of a covered loss, you may be asked to decide between two choices.
A. Fair Rental Value. Your adjuster can calculate the fair rental value of your home by determining the rental value of comparable homes in your area. Payment will be for the shortest time necessary to repair or replace the damaged property.
B. Additional Living Expenses. You may choose to keep track of your living expenses while your home is uninhabitable. Safeco Insurance Company of America will reimburse you for any increase in your additional living expenses. If you choose the Additional Living Expenses option, you will be required to present all receipts to document your claim.



**Safeco Insurance**™

A Liberty Mutual Company

Phone:    (509) 944-8365
Fax:      (888) 268-8840

### You, your insurance company and vendors

We may request that certain vendors assist us in determining the cost of damages to your property and/or provide you with the name(s) of one or more vendors that may be able to make repairs or perform services to your property. You should be aware that by requesting vendors to assist us we are neither accepting nor rejecting coverage for your loss. Furthermore, the choice of which vendor you use to perform repairs or services to your damaged property is completely up to you.[1] You may choose to hire a vendor that is assisting us or someone of your own choosing. If you request and we are aware of qualified vendors we may be able to provide you with the name(s) of vendors that may be able to assist you.

If you hire a vendor that assists us in evaluating your damages or a vendor whose name we supplied, you will need to contract with them directly. Should you be dissatisfied with the quality of repairs or any other aspect of the vendor's work, you will need to resolve the matter with the vendor. We do not guarantee or warranty the work of any vendor, nor do we accept responsibility for any vendors' activities or conduct during their performance of repairs or services to your property.[2]

However, if an issue arises due to additional loss-related repair work that was not previously addressed we will need to be notified to evaluate whether an additional or supplemental payment will be required. Failure to notify us prior to completing these additional repairs could result in non-payment for any supplemental items.

The above statements are for your information and clarification. Nothing contained in this notice is intended to change or alter the provisions of your policy or your rights and responsibilities therein.

---

[1] We may hire and pay for expert services to assist in determining the cause of loss or determine appropriate engineering or repair schemes for vendors to use in evaluating your damages. These costs are considered adjustment expenses and are not applied against your policy limits. Should you wish to obtain the services of your own expert(s) you may do so at your own expense.

Exhibit I pg. 3 of 8

Exhibit B



Safeco Insurance Company of America
Inside Property Loss Specialist II - Personal Lines
PO Box 515097
Los Angeles, CA 90051

Mailing Address:
PO Box 515097
Los Angeles, CA 90051

Phone:  (800) 332-3226
        (509) 944-8365
Fax:    (888) 268-8840

A Liberty Mutual Company

July 18, 2012

Leonard Kelley
821 N St Ste 205
Anchorage, AK  99501-3285

| | |
|---|---|
| Insured Name: | Leonard Kelley |
| Policy Number: | OH1759199 |
| Loss Date: | January 30, 2012 |
| Claim Number: | 169813205039 |

Dear Mr. Kelley:

This letter is in response to your claim filed for water damage to your rental property located at 12164 N Glenn Hwy, Sutton, AK, 99674 which reportedly occurred on or about January 30, 2012. Please note that at this time Safeco Insurance Company of America cannot confirm or deny coverage for this loss. The purpose of this letter is to advise you that an investigation into this matter will be conducted under a Reservation of Rights so that the investigation can continue without prejudice to your rights or Safeco Insurance Company of America's rights under the policy.

While we rely on the entirety of the insurance contract for our coverage position, the remainder of this letter will point out certain sections which may be particularly applicable to this claim. Please refer to your insurance policy form **P-4103EP 7/08- LANDLORD PROTECTION POLICY - SPECIAL FORM**, which is modified by your **P-4110AKEP R1 11/08- SPECIAL PROVISIONS — ALASKA**:

### PERILS INSURED AGAINST

We insure for accidental direct physical loss to the property described in Coverages **A** and **B** except:

1.  losses excluded under **General Exclusions**;

2.  freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

    a.  maintain heat in the building; or
    b.  shut off the water supply and drain the system and appliances of water;

Case 3:14-cv-00083-TMB   Document 1-2   Filed 05/07/14   Page 65 of 88

A dwelling under construction includes being remodeled, reconstructed, renovate dor repaired in preparation for occupancy as a residence at the time of loss.
...

7.   a. wear and tear, marring, scratching, deterioration;
     ...

## GENERAL EXCLUSIONS

We do not insure for loss caused by any of the following. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
...

10.   **Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:
      ...

      d.    maintenance;
      ...

13.   *Fungi,* **Wet or Dry Rot, or accompanying Bacteria,** meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or the natural growth, spread, proliferation, or presence of accompanying bacteria. This exclusion does not apply to the extent coverage is provided for in the **Other Coverage 11.** *Fungi,* **Wet or Dry Rot, or accompanying Bacteria** (or, as provided for in the **Other Coverage 8.** *Fungi,* **Wet or Dry Rot or accompanying Bacteria,** in Landlord Protection Policy Condominium Broad Form, form P-4104/EP.)
...

15.   Any presence or condensation of humidity, moisture or vapor; or the continuous or repeated seepage or leakage of water or steam that occurs over a period of weeks, months or years, including but not limited to that from, around, through or contained by:

      a.    plumbing, heating, or air conditioning systems or fire protective or other sprinkler systems;

      b.    household appliances; or

      c.    roofs, roofing materials, gutters, downspouts, skylights, windows, doors, vents, insulation and siding
            or other exterior finish materials, or any part, including the application or use of accessories, flashing, caulking or sealants.

However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

...

Your policy has additional coverages for Fungi, Wet of Dry Rot or Bacteria. Please refer to your insurance policy form **P-4103EP 7/08- LANDLORD PROTECTION POLICY - SPECIAL FORM**, which is modified by your **P-4110AKEP R1 11/08- SPECIAL PROVISIONS — ALASKA**:

## OTHER COVERAGES

11.     *Fungi,* **Wet or Dry Rot, or accompanying Bacteria.** If a covered loss under this policy results in *fungi,* wet or dry rot, or accompanying bacteria and direct physical loss to covered property ensues from the resulting *fungi,* wet or dry rot, or accompanying bacteria, we will pay:

      a.    the cost to remove the *fungi,* wet or dry rot, or accompanying bacteria to the extent necessary to repair the damage from the covered cause of loss;

      b.    the direct physical loss to covered property caused by the resulting *fungi,* wet or dry rot, or accompanying bacteria to the extent that it is considered damage from the covered cause of loss;

      c.    up to $5,000 for the cost of remediation. Remediation means to treat, contain, remove or dispose of *fungi,* wet or dry rot, or accompanying bacteria beyond that which is required to repair or replace the covered property damaged by the covered cause of loss. Remediation includes any testing to detect, measure or evaluate *fungi,* wet or dry rot, or accompanying bacteria and any decontamination of the *residence premise* or property; and

      d.    **Additional Living Expense or Fair Rental Value loss covered under Coverage D — Loss of Rent, Rental Value, and Additional Living Expense.**

This coverage only applies when such loss or costs:

e. are a result of a loss we cover that occurs during the policy period;

f. are not excluded under **General Exclusions;** and

g. only if reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to lawns, plants, shrubs or trees.

Coverage provided under this additional coverage does not increase the limit of liability for coverages **A**, **B**, **C** and **D**, regardless of the number of locations or number of claims made.

We are asking your cooperation in providing the following as soon as possible:

- Signed copy of the lease agreement.
- Please provide copies of the water bills dating back January 2012 up to the present
- Please provide tenant T. Burnett's contact information.

The information being requested is necessary to allow us to properly investigate coverage under this policy and is made in accordance with the following policy provisions **P-4103EP 7/08- LANDLORD PROTECTION POLICY - SPECIAL FORM:**

**GENERAL CONDITIONS**

. . .

4.   **Your Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

    a.     cooperate with us in the investigation, settlement or defense of any claim or suit;

    ...

    c.    protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

    ...

Safeco Insurance Company of America will continue to investigate this claim. However, Safeco Insurance Company of America reserves any and all rights and defenses allowed under the policy of insurance and the law. No action taken by Safeco Insurance Company of America, its employees and/or agents, is intended to be or should be considered to be a waiver of any of these rights or defenses under the policy of insurance or the law.

If you have any questions regarding this claim, please feel free to contact me at one of the numbers listed below.

Sincerely,

Pearl Locker, AIC
Inside Property Loss Specialist II - Personal Lines
Safeco Insurance Company of America
(800) 332-3226 Ext: 763-8365
(509) 944-8365 Fax: (888) 268-8840
pearl.locker@safeco.com



Safeco Insurance Company of America
Inside Property Loss Specialist II - Personal Lines
PO Box 515097
Los Angeles, CA 90051

Mailing Address:
PO Box 515097
Los Angeles, CA 90051

Phone:  (800) 332-3226
        (509) 944-8365
Fax:    (888) 268-8840

A Liberty Mutual Company

August 8, 2012

Leonard Kelley
821 N St Ste 205
Anchorage, AK  99501-3285

Insured Name:       Leonard Kelley
Policy Number:      OH1759199
Loss Date:          January 30, 2012
Claim Number:       169813205039

Dear Mr. Kelley:

This letter is in response to your claim filed for water damage to your rental property located at
12164 N Glenn Hwy, Sutton, AK, 99674 which reportedly occurred on or about January 30,
2012. As you are aware, we have assigned our Special Investigator Sandy Sutton to assist with
our investigation. Please be advised that until our investigation is complete, we cannot confirm
coverage. As soon as our investigation is complete, we will be able to proceed with our coverage
determination.

Safeco Insurance Company of America will continue to investigate this claim. However, Safeco
Insurance Company of America reserves any and all rights and defenses allowed under the policy
of insurance and the law. No action taken by Safeco Insurance Company of America, its
employees and/or agents, is intended to be or should be considered to be a waiver of any of these
rights or defenses under the policy of insurance or the law.

If you have any questions regarding this claim, please feel free to contact me at one of the numbers listed below.

Sincerely,

Pearl Locker, AIC
Inside Property Loss Specialist II - Personal Lines
Safeco Insurance Company of America
(800) 332-3226 Ext: 763-8365
(509) 944-8365 Fax: (888) 268-8840
pearl.locker@safeco.com

821 N Street No.205
Anchorage, Alaska 99501
August 10, 2012

Safeco Insurance
P.O. Box 515097
Los Angeles, Ca. 90051

Dear Ms. Locker:

We have received Safeco's letter of 7/18/12 with regard to the interior loss along with the engineer's report. The engineer's report reflected the losses, but no estimate. Davis took pictures and made an estimate.

Has Safeco received a replacement cost estimate? If so, I would like a copy. If not does Safeco plan to get an estimate or do you want Sutton Storage to get an estimate?

I talked to Ms. Sutten and gave her a statement. Please send me a copy.

In response to Ms. Sutten's and your request find:

1) A copy of the executed lease.

2) There are no water utility bills, property is on a well.

3) I believe T.Burnette lives with his parents their telephone number is 907 688-1065.

Sincerely,

Leonard T. Kelley for Sutton Storage

821 N Street No. 205
Anchorage, AK 99501
August 16, 2012

Ms. Perl Locher
Safeco Insurance
PO Box 515097
Los Angeles, CA 90051

Policy No. OH1759199 Sutton Storage

Safeco letter of 8/8/2012 has been received. I do not want Safeco to assume that the loss occurred on 1/30/12. I assume the lost occurred sometime after the tenant left the property; but I did not find out about it until the spring.

I have provided Ms. Sutton with my statement and sent various documents to your office. Needless to say, Sutton Storage would like these issues resolved; so Safeco should either accept or reject the water damage claim as a covered loss.

Sincerely,

Leonard T. Kelley
For Sutton Storage

Exhibit B
Exhibit L pg. 1 of 1
Case 3:14-cv-00083-TMB   Document 1-2   Filed 05/07/14   Page 73 of 88



Safeco Insurance Company of America
Inside Property Loss Specialist II - Personal Lines
PO Box 515097
Los Angeles, CA 90051

Mailing Address:
PO Box 515097
Los Angeles, CA 90051

Phone:  (800) 332-3226
        (509) 944-8365
Fax:    (888) 268-8840

A Liberty Mutual Company

October 1, 2012


Leonard Kelley
821 N St Ste 205
Anchorage, AK  99501-3285


Insured Name:       Leonard Kelley
Policy Number:      OH1759199
Loss Date:          May 1, 2012
Claim Number:       169813205039


Dear Mr. Kelley:

This letter is in response to your claim filed for water damage to your rental property located at 12164 N Glenn Hwy, Sutton, AK, 99674 which reportedly occurred on or about January 30, 2012. It is our understanding that your tenant moved out sometime December 2011. It is also our understanding that water and mold damage is discovered in the interior of the home sometime May 2012.

As you are aware, our Special Investigator Sandra Sutton is assigned to assist with our investigation. Sandra understands from the previous tenant Travis Burnett that they moved in the home the end of Sept or beginning of October 2011. At the time they moved in, tenant stated the home did not have any hot water or heat except for the fireplace. The Toyo stoves did not work and to replace the parts were almost as expensive as getting new ones. Tenant stated that when he told Mr. Kelley that they did not work, he was told it was his responsibility. The only heat source was the fireplace and the windows and doors were so old that they did not help to insulate the home.

Travis stated that they moved out in December 2011 because it was too cold in the house and he had a six month old son and a two year old daughter and they only had the fireplace to keep the home warm and it was not sufficient. When he left the house, he drained the water out of the water heater and overflow line as this is what the plumber who Mr. Kelly had hired to put in the water heater had told him to do in case temperatures went way down even while living there. Travis stated he did call Mr. Kelley and told him he was moving out and that he drained the hot water tank, overflow lines and shut the main water line off but never said he winterized the home. Travis said if the home had been heat maintained, the lines would not have froze but the house was already cold due to no heat source except fire place. Travis stated the insured was aware of the lack of heat.

Your insurance policy form **P-4103EP 7/08 - LANDLORD PROTECTION POLICY - SPECIAL FORM**, which is modified by your **P-4110AKEP R1 11/08 - SPECIAL PROVISIONS — ALASKA** includes the following provision:

## PERILS INSURED AGAINST

We insure for accidental direct physical loss to the property described in Coverages **A** and **B** except:

1.  losses excluded under **General Exclusions;**

2.  freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

    a.  maintain heat in the building; or

    b.  shut off the water supply and drain the system and appliances of water;

    A dwelling under construction includes being remodeled, reconstructed, renovated or repaired in preparation for occupancy as a residence at the time of loss.

    ...

7.  a. wear and tear, marring, scratching, deterioration;
    ...

    e.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;
        ...

If any of these cause water to escape from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water, unless otherwise excluded, and we cover the cost of tearing out and replacing any part of the dwelling necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment; or roof drain, gutter down spout or similar fixtures or equipment. Under items **2.** thru **7.** any ensuing loss, not excluded or excepted in this policy, is covered.
...

## GENERAL EXCLUSIONS

We do not insure for loss caused by any of the following. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area
....

10. **Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

    ...

    d.  maintenance;

    of property whether on or off the Described Location by any person or organization. However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

    ...

11. **Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded or excepted by any other provision in this policy is covered.

12. **Weather** that contributes in any way with a cause or event not covered in this section to produce a loss. However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

13. *Fungi,* **Wet or Dry Rot, or Bacteria** meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for in the **Other Coverage 11.** *Fungi,* **Wet or Dry Rot, or Bacteria under Dwelling Coverages.**

    ...

15. Any presence or condensation of humidity, moisture or vapor; or the continuous or repeated seepage or leakage of water or steam that occurs over a period of weeks, months or years, including but not limited to that from, around, through or contained by:

    a.  plumbing, heating, or air conditioning systems or fire protective or other sprinkler systems;

    b.  household appliances; or
        ...

    c.  roofs, roofing materials, gutters, downspouts, skylights, windows, doors, vents, insulation and siding or other exterior finish materials, or any part, including the

application or use of accessories, flashing, caulking or
sealants.

However, any ensuing loss not excluded or excepted by
any other provision in this policy is covered.

…

Based on the preceding policy language, and the fact that the heat is not maintained in the home
and above exclusions also apply, we are unfortunately unable to provide coverage this loss. Your
policy does have an additional coverage for fungi, wet or dry rot, or bacteria that we investigated
to see if it would provide coverage for this loss. Please refer to your insurance policy form P-
4103EP 7/08 - LANDLORD PROTECTION POLICY - SPECIAL FORM, which is
modified by your P-4110AKEP R1 11/08 - SPECIAL PROVISIONS — ALASKA:

**OTHER COVERAGES**

The following **Other Coverages** are subject to all the terms, provisions,
exclusions and conditions of this policy.

…

11.    *Fungi, Wet or Dry Rot, or accompanying Bacteria.* If a covered
loss under this policy results in **fungi**, wet or dry rot, or
accompanying bacteria and direct physical loss to covered
property ensues from the resulting **fungi**, wet or dry rot, or
accompanying bacteria, we will pay:

     a.    the cost to remove the *fungi,* wet or dry rot, or
accompanying bacteria to the extent necessary to
repair the damage from the covered cause of loss;

     a.    the direct physical loss to covered property caused by
the resulting *fungi,* wet or dry rot, or accompanying
bacteria to the extent that it is considered damage from
the covered cause of loss;

     b.    up to $5,000 for the cost of remediation. Remediation means to treat,
contain, remove or dispose of *fungi,* wet or dry rot, or accompanying
bacteria beyond that which is required to repair or replace the covered
property damaged by the covered cause of loss. Remediation includes
any testing to detect, measure or evaluate *fungi,* wet or dry rot, or
accompanying bacteria and any decontamination of the *residence
premise* or property; and

     c.    **Additional Living Expense** or **Fair Rental Value** loss covered under
**Coverage D — Loss of Rent, Rental Value, and Additional Living
Expense.**

This coverage only applies when such loss or costs:

    **d.**    are a result of a loss we cover that occurs during the policy period;

    **e.**    are not excluded under **General Exclusions;** and

    **f.**    only if all reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to trees, shrubs, or other plants. Coverage provided under this additional coverage does not increase the limit of liability for coverages **A, B, C** and **D,** regardless of the number of locations or number of claims made.

In order for this other coverage to apply, the fungi, wet or dry rot or bacteria must damage covered property, be caused by a covered cause of loss and not be excluded on the policy. In this case, there was no damage to covered property, the mold, fungi wet or dry rot or bacteria was not caused by any covered causes of loss, but by several excluded causes of loss. Because of this, the other coverage does not apply to provide and we are unable to provide any coverage for this loss.

At all times we strive to fully assess our coverage potential. We are always open to reevaluating our position, should new facts come to light. If you have any additional information that you believe will have a material effect on our determination of coverage, please provide that information to us in writing at your earliest opportunity. You should, however, regard this as a denial of your claim.

Please refer to your insurance policy form **P-4103EP 7/08 - LANDLORD PROTECTION POLICY - SPECIAL FORM:**

    **GENERAL CONDITIONS**
    . . .
    **4.**    **Your Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:
    . . .
        **c.**    protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

Now that you are aware of the damage to your property, you must make the necessary repairs. Please note that any future damage that occurs because the needed repairs were not done may not be covered under your policy.

Please refer to your insurance policy form **P-4103EP 7/08 - LANDLORD PROTECTION POLICY - SPECIAL FORM,** which is modified by your **P-4110AKEP R1 11/08 - SPECIAL PROVISIONS — ALASKA:**

## GENERAL CONDITIONS

10.    **Suit Against Us.** No action shall be brought against us unless
there has been compliance with the policy provisions and the
action is started within three years after the inception of the loss
or denial of claim, whichever is greater.

Safeco Insurance Company of America may continue to investigate this claim. However, Safeco
Insurance Company of America reserves any and all rights and defenses allowed under the policy
of insurance and the law. No action taken by Safeco Insurance Company of America, its
employees and/or agents, is intended to be or should be considered to be a waiver of any of these
rights or defenses under the policy of insurance or the law.

Sincerely,

Pearl Locker, AIC
Inside Property Loss Specialist II - Personal Lines
Safeco Insurance Company of America
(800) 332-3226 Ext: 763-8365
(509) 944-8365 Fax: (888) 268-8840
pearl.locker@safeco.com / office hours: 8:30-5:00pst

cc: ALASKA USA INS BROKERS LLC

CV2136 07/12

Exhibit B
Exhibit M pg. 6 of 6
Case 3:14-cv-00083-TMB   Document 91-2   Filed 05/07/14   Page 79 of 88

Leonard Kelley
821 N Street Ste 205
Anchorage, Alaska 99501-3285
October 16 2012

Pearl Locker, AIC
Inside Property Loss Specialist II – Personal Lines
Safeco Insurance Company of America
P.O. Box 515097
Los Angeles, CA 90051

RE:    Insured's Name:    Leonard Kelley
          Policy Number:    OH1759199
          Loss Date:        May 1, 2012
          Claim Number:    169813205039

Dear Ms. Locker:

The Safeco coverage denial letter of 10/1/2012 has been received. Please send me the following:

1. Copy of the taped Declaration of Leonard Kelley;

2. Copy of Travis Burnette statement;

3. Statement(s) from any other person(s);

4. Paul Davis restoration took pictures, made a report and bid regarding the interior loss. Please send these items:

        A. Davis Report;

        B. Davis bid for interior loss;

        C. Copies of pictures;

        D. Copy of Safeco investigative report.

I also request that Safeco answer the following questions:

1. Does Safeco dispute any portion of the statement made by Leonard Kelley to Ms. Sutton?

2. Does Safeco insure rental homes that are heated by wood?

3. It is undisputed that the loss was caused by the lack of heat, causing pipes to freeze and eventually burst, causing interior damage. That being said, please explain how General Exclusions 10 through 15 apply to the claimed loss.

4. Is it Safeco's position the rental house owner must provide heat, even if the Tenant is required by rental agreement to do so?

Page 1

5. Safeco states that Sutton Storage must make the necessary repairs. Please state the nature and extent of the necessary repairs your insured is requested to make, given Safeco's denial of coverage.

Respond to the aforementioned questions and provide the requested documents.

Sincerely,

Sutton Storage, LLC



Safeco Insurance™

A Liberty Mutual Company

Safeco Insurance Company of America
Inside Property Loss Specialist II - Personal Lines
PO Box 515097
Los Angeles, CA 90051

Mailing Address:
PO Box 515097
Los Angeles, CA 90051

Phone:   (800) 332-3226
         (509) 944-8365
Fax:     (888) 268-8840

October 31, 2012


Leonard Kelley
821 N St Ste 205
Anchorage, AK  99501-3285


Insured Name:      Leonard Kelley
Policy Number:     OH1759199
Loss Date:         May 1, 2012
Claim Number:      169813205039


Dear Mr. Kelley:

This letter is in response to your claim filed for damage to your property located in Anchorage, AK.  We received your letter dated October 16, 2012 on October 24, 2012.  Thank you for sending it.

At your request, we have enclosed Paul Davis Restoration's bid to repair the interior damage and copies of all pictures.  Regarding the remaining items you requested, they are our work product and we are unable to provide them.   You also asked what repairs were needed to the property.  The answer is any and all repairs needed as a result of this excluded loss.  Please be advised that your claim is being adjusted based on the circumstances of the loss and the terms of your policy and not the terms of policy with other Insured's.

The results of our investigation, the policy language quoted in our October 1, 2012 letter and the facts of this loss show that all the listed excluded causes of loss applied here.  I have enclosed a copy of our October 1, 2012 letter for your records.

Safeco Insurance Company of America reserves any and all rights and defenses allowed under the policy of insurance and the law. No action taken by Safeco Insurance Company of America, its employees and/or agents, is intended to be or should be considered to be a waiver of any of these rights or defenses under the policy of insurance or the law.

Sincerely,


Pearl Locker, AIC
Inside Property Loss Specialist II - Personal Lines
Safeco Insurance Company of America
(800) 332-3226 Ext: 763-8365
(509) 944-8365 Fax: (888) 268-8840
pearl.locker@safeco.com / office hours: 8:30-5:00pst


*Our Personal Insurance policyholders can go online to http://www.safeco.com/accountservices to check the status of their claim and update their policy 24 hours a day.*

CA0449 /EF 9/99

Exhibit O pg. 1 of 1

SUTTON STORAGE LLC
In care of:
Leonard Kelley
821 N Street Ste 205
Anchorage, Alaska 99501-3285
November __16__, 2012

Pearl Locker, AIC
Inside Property Loss Specialist II – Personal Lines
Safeco Insurance Company of America
P.O. Box 515097
Los Angeles, CA 90051

RE:    Insured's Name:    Leonard Kelley
        Policy Number:    OH1759199
        Loss Date:    May 1, 2012
        Claim Number:    169813205039

Dear Ms. Locker:

The Safeco letter of 10/31/2012 and estimates has been received. Safeco's assertion that the disclosure of witness statements is "work product" and therefore will not be disclosed violates 3AAC 26.030, 26.060, and 26.070, and assumes that the statements were prepared at the request of its attorney. We are entitled to obtain them because Safeco alleges the statements contain facts supporting their denial of coverage of the Sutton Storage LLC claims. Please send us copies of the witness statements.

Furthermore, including a copy of the Safeco letter of 10/1/2012 does not answer the questions set forth in the Sutton Storage LLC letter of 10/16/2012. Again, we request that Safeco answer the questions set forth in that letter (repeated below), excepting No. 5, and the additional question (No. 6) below:

1. *Does Safeco dispute any portion of the statement made by Leonard Kelley to Ms. Sutton?*
2. *Does Safeco insure rental homes that are heated by wood?*
3. *It is undisputed that the loss was caused by the lack of heat, causing pipes to freeze and eventually burst, causing interior damage. That being said, please explain how General Exclusions 10 through 15 apply to the claimed loss.*
4. *Is it Safeco's position the rental house owner must provide heat, even if the Tenant agrees to do so?*

In addition:

6. What does Safeco mean by "winterize"?

Please answer the questions and send the requested statements, advise/update the status of the Safeco investigation, and designate the documentation Safeco requires in order to reverse its denial of coverage as soon as possible.

Sincerely,

for Sutton Storage, LLC



Safe**o** Insurance™

Liberty Mutual Company

Safeco Insurance Company of America
Inside Property Loss Specialist II - Personal Lines
PO Box 515097
Los Angeles, CA 90051

Mailing Address:
PO Box 515097
Los Angeles, CA 90051

Phone:  (800) 332-3226
        (509) 944-8365
Fax:    (888) 268-8840

December 10, 2012

Leonard Kelley
821 N St Ste 205
Anchorage, AK  99501-3285

| | |
|---|---|
| Insured Name: | Leonard Kelley |
| Policy Number: | OH1759199 |
| Loss Date: | May 1, 2012 |
| Claim Number: | 169813205039 |

Dear Mr. Kelley:

This letter is in response to your claim filed for damage to your property located in Anchorage, AK. We received your letter dated November 16, 2012 on November 21, 2012. Thank you for sending it.

Your letter contains no new information that would change our position in regards to our loss. In your letter, you request copies of statements taken of other parties along with documents from the claim file. Please note that statements and other information obtained as part of our investigation is our work product and cannot be produced without a subpoena. We are not asserting this information is attorney-client privileged as outlined in your letter. I have enclosed a copy of our October 31, 2012 letter which previously responded to this request for your records.

As outlined on our letter dated October 1, 2012, the policy excludes for damages resulting from freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to maintain heat in the building; or shut off the water supply and drain the system and appliances of water. I have enclosed a copy of our October 1, 2012 letter for your records.

It is clear that the water supply was not shut off and the system and appliances were not drained of water. You have not provided any information to support the fact that heat was maintained in the property. If you have information to support heat was maintained, please forward this information to us along with any supporting documentation so that we can consider it.

If you have any additional information that you believe will have a material effect on our determination of coverage, please provide that information to us in writing at your earliest opportunity.

*Our Personal Insurance policyholders can go online to http://www.safeco.com/accountservices to check the status of their claim and update their policy 24 hours a day.*

CA0449 /EF 9/99

Exhibit Q pg. 1 of 2

Safeco Insurance Company of America reserves any and all rights and defenses allowed under the policy of insurance and the law. No action taken by Safeco Insurance Company of America, its employees and/or agents, is intended to be or should be considered to be a waiver of any of these rights or defenses under the policy of insurance or the law.


Sincerely,


Pearl Locker, AIC
Inside Property Loss Specialist II - Personal Lines
Safeco Insurance Company of America
(800) 332-3226 Ext: 763-8365
(509) 944-8365 Fax: (888) 268-8840
pearl.locker@safeco.com / office hours: 8:30-5:00pst

CA0449 /EF 9/99

Exhibit Q pg. 2 of 2

Exhibit B

Leonard Kelley
821 N Street Ste 205
Anchorage, Alaska 99501-3285
January _____, 2013

Pearl Locker, AIC
Inside Property Loss Specialist II – Personal Lines
Safeco Insurance Company of America
P.O. Box 515097
Los Angeles, CA 90051

RE:    Insured's Name:    Leonard Kelley
        Policy Number:    OH1759199
        Loss Date:    May 1, 2012
        Claim Number:    169813205039

Dear Ms. Locker:

In Safeco's letter dated December 12, 2012, you stated:

"the policy excludes for damages resulting from freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leaking or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to maintain heat in the building or shut off the water supply and drain the system and appliances of water.

It is clear that the water supply was not shut off and the system and appliances were not drained of water.  You have not provided any information to support the fact that heat was maintained in the property. "

As Safeco knows, the property was a rental and the tenant vacated the property leaving the house unheated.  It is my understanding the tenant advised Safeco that before he vacated the house, he drained the hot water tank, overflow lines and shut off the main water lines.   That being the case, the loss is covered; nevertheless, the loss would be covered even if the tenant failed to shut off the water, drain the pipes, and left the property unheated.   This was a "Landlord Protection Insurance Policy", which protects Sutton Storage LLC from property damage arising out of the maintenance/use of the insured property.  (See Additional Interest Endorsement).

Again we request copies of any statement by Kelley, Burnette, or others which support a coverage defense. We should not be forced to sue our insurer (Safeco) to subpoena duces tecum the records.

Sincerely,

Leonard Kelley for
Sutton Storage, LLC

Exhibit R pg. 2 of 2

Exhibit B